UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____

ROBERT E. CRABTREE, JR.,              :

                                   :       Civil Case No: 3:17-CV-01709-VAB

          Plaintiff,         :

                                   :       January 26, 2018

      - v -            :

                                   :

HOPE'S WINDOWS, INC., BRIGHT WINDOW  :
SPECIALISTS, INC., and RICHARD KUSYK  :

                                   :

          Defendant.     :

_____

### SECOND AMENDED COMPLAINT OF
### PLAINTIFF ROBERT E. CRABTREE, JR.

Plaintiff, Robert E. Crabtree, Jr. ("Plaintiff"), by and through his attorneys, Fishman Decea & Feldman as and for his second amended complaint herein alleges the following:

1. Plaintiff is a resident of the State of Vermont and is the fee owner of certain real property located at, and known as, 918 North Street, Greenwich, Connecticut (the "Premises"). The Premises are the subject of this action.

2. Defendant Hope's Windows, Inc. ("Hope's") is upon information and belief a foreign business corporation formed in the State of Delaware which maintains a principal place of business at 84 Hopkins Avenue, Jamestown, New York 14702.

3. Defendant Bright Window Specialists, Inc. ("Bright"), which maintains an office at 214 West 29th Street, New York, New York 10001, is upon information and belief defendant Hope's sole regional authorized sales representative for Greenwich, Connecticut, where the Premises are located.

4. Defendant Richard Kusyk ("Kusyk") is the owner of Bright which installed the windows and doors at the Premises and which are the subject of this action and who represented to Plaintiff that the windows were warrantied for lifetime.

5. Hope's touts itself as the "world's preeminent manufacturer of custom steel windows, steel doors, security windows, fire-rated windows, and other architectural products."

6. In an effort to sell its product, Hope's, individually, and by and through its authorized agents, including the other defendants herein named, represents to the world the following:

> Hope's meticulous manufacturing process and unrivaled artistry result in windows and doors of impeccable quality. And for good reason. We painstakingly handcraft each window and door in the United States, and back each with a stellar reputation for the finest quality.
>
> Engineering Process:
>
> Hope's project engineering group interactively works with customers and architects in developing window and door design concepts to provide the highest quality product and assure continuous customer satisfaction. We utilize the latest and most technologically advanced releases of AutoCAD in preparing the document drawings. Hope's also enlists the support and input of all internal groups to furnish their expertise in planning the project.
>
> Manufacturing Process:
>
> Each window and door Hope's creates is proudly handcrafted to meet an owner's, architect's, and builder's most exacting and demanding requirements. Since each window and door is custom-made, Hope's windows can be designed to enhance any architectural theme.
>
> Hope's steel windows are created from solid, hot-rolled steel sections. The superior strength of steel, combined with welded fabrication, produces frames and ventilators that will not rack. All frame and vent corners and muntin intersections are fully welded and ground smooth resulting in enhanced weather resistance and joints that are stronger than the steel itself.

7. It was these representations upon which Plaintiff relied in retaining Hope's to supply the lifetime warrantied windows for his custom made home . The products manufactured

by Hope's may only be purchased through authorized dealers; Bright is Hope's only authorized representative in the entire Northeastern United States so the purchase of the windows had to be effectuated through Bright and the windows and doors were installed by Kusyk. At all times relevant hereto Kusyk, knowing he is the only representative in the area, acts the part with a "take it or leave it" attitude and unscrupulous business practices. Defendants collectively manufactured, constructed, designed, prepared, assembled and installed the windows and doors which are the subject of this action.

8.      The windows installed at the Premises came with a lifetime warranty from manufacturing defects. Bright, by and through Kusyk, advertise on their website (www.brightwindows.net) among other things that:

> Hope's has developed ways to make those windows accommodate insulating glass, triple weather stripping and superior finishes that **will last a lifetime**. (Emphasis supplied).

9.      Hope's products were purchased from Hope's *via* Bright. To this end, on or about December 2, 2005, Plaintiff, by and through his general contractor, entered into a contract with defendants to purchase windows and doors from Hope's for installation at his home by Kusyk.

10.      The original contract price bargained for between Plaintiff by and through his general contractor and Bright for the windows and doors were $598,630 (the "Contract"). Subsequent changes to the contract resulted in an increased contract price of $785,885 by September 2006. By the time the doors and windows were installed, the contract price had morphed to almost $1,000,000.

11.      Plaintiff has fulfilled all of his obligations under the Contract.

12.      By 2007, ninety-five percent of the windows and doors had been installed and by 2008 Plaintiff moved into the home. In the ensuing months Plaintiff discovered that windows

and doors frames were not installed properly by reason of the fact that there were missing frame pieces, the window sills and door bucks were not set properly and rattled, the hardware was either missing or improperly installed, the windows did not have handles and were otherwise unusable and inoperable for their intended purposes.

13. When defendants refused to stand by the installation of windows and doors Plaintiff was forced to bring a legal action which was settled and general releases were exchanged. The releases by their terms released all claims from the beginning of time to the date of the release. All of the facts upon which this action is based occurred in 2017, after the date of the release, and are not precluded by the release. Nor do the releases release Plaintiff's products liability claim which accrued in the first quarter of 2017. Only defendants Hope's and Bright were released; Kusyk was not.

14. At the time of the settlement of the 2010 lawsuit Plaintiff had no knowledge of the latent product defects of the glass and/or frames. The releases were never intended either to waive the lifetime warranty or claims based upon occurrences which have their beginning after the instrument was executed. The language covering future claims in the releases[1] was intended to cover only inchoate claims that are in being at the time of release but which have not yet manifested themselves, not claims that have yet to accrue or manifest like the products liability and other claims herein.

15. It was not until February 2017 that the product defects occurred when the first of five windows at the Premises spontaneously fractured like an automobile windshield. Thereafter, by late summer 2017, four additional windows spontaneously burst in the same

---

[1] The releases state with "ever had, now have, or hereafter can, shall or may have, for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this REALEASE."

manner. The defective glass and/or frames were purchased and installed under the $1,000,000 contract.

16.     The windows burst spontaneously and were not, and could not be, damaged based upon any act or omission on Plaintiff's part; the only possible cause of the fractures of the lifetime warrantied windows is a manufacturing and/or design defect of the glass and/or frames.

17.     Plaintiff contacted defendants to request that they replace the defective windows and doors and to ensure that it would not be a recurring problem which doors and windows by Kusyk's own words "will last a lifetime". It what is tantamount to extortion, and knowing that Plaintiff had no other option but to deal with Bright, Kusyk agreed to come to inspect the defective windows only after he was paid a $1,500 down payment fee which would either be applied to the work to be done or returned if the work was not completed. With no other alternative, Plaintiff paid the fee; when Kusyk inspected the windows he said he could replace them for a minimum of $3,500 per window which he stated was the retail price of the windows.

18.     Defendants refused to retain defendants to replace the defective windows at a cost of $3,500 per window and which they represent "will last a lifetime," under the warranty.

19.     Despite due demand therefore, Bright and Kusyk failed and refused to return to Plaintiff the $1,500 deposit for the inspection of the windows.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
(Violation of ¶ C.G.S. 572m)

20.     Plaintiff repeats and reiterates the allegations of paragraphs 1 through 19 herein.

21.     Defendants are "Product Sellers" as defined in ¶ C.G.S. 572m (a).

22.     Defendants, as "Product Sellers", are "Manufacturers" of the windows or "Products" complained of herein under ¶ C.G.S. 572m (e).

23. Plaintiff's product liability claim includes the damages he has suffered and continues to suffer as a result of defendants' violation of ¶ C.G.S. 572m; Plaintiff's damages occurred in February 2017 and are continuing.

24. Defendants are in horizontal privity with Plaintiff and, as "Manufacturers", are jointly, severally and strictly liable to Plaintiff under ¶ C.G.S. 572m *et seq.*

25. As a result of defendants' status as "Manufacturers" under ¶ C.G.S. 572m *et seq.*, and their violations thereunder, defendants are jointly, severally and strictly liable to Plaintiff for an amount to be determined upon the trial of this action but presently believed to be in excess of $2,500,000 plus incidental and consequential damages to be determined upon the trial of this action.

AS AND FOR A SECOND CAUSE OF ACTION
(Violation of C.G.S. Title 42a)

26. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 25 herein.

27. This case involves the sale of goods by a merchant in excess of the monetary limitations and, therefore, is governed by C.G.S.A. § 42a-2-101 *et seq.*

28. Plaintiff accepted and paid for goods from defendants which he then discovered were non-conforming.

29. As a result of defendants' violation of C.G.S.A. § 42a-2-101 *et seq.*, Plaintiff is entitled to a money judgment is the sum of $2,500,000 plus incidental and consequential damages in an amount to be determined upon the trial of this action.

AS AND FOR A THIRD CAUSE OF ACTION
(Breach of Contract)

30. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 29 herein.

31.     The contract required Bright to install Hope's windows and provide to Plaintiff a lifetime warranty of the windows and doors at the Premises. Bright installed Hope's windows and doors in the Premises however the windows and doors (the "Goods") spontaneously fractured. Plaintiff demanded the damages be repaired or replaced under the warranty but defendants have failed and refused to comply.

32.     Plaintiff specifically chose the Goods based on Hope's representation that it is the "world's preeminent manufacturer of custom steel windows, [and] doors," based upon the other representation made by defendants as set forth above, including Kusyk's representation that the Goods would be free of defect and "last a lifetime". Defendants breached the contract when they failed and refused to honor the lifetime warranty under the contract.

33.     As a result of defendants' breach as aforesaid, Plaintiff has incurred damages in an amount it would cost to cover the repair/replacement of the windows and doors which shall to be determined upon the trial of this action but presently believed to be in excess of $2,500,000 and Plaintiff demands judgment thereon.

<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>
(Breach of Implied Warranty)

34.     Plaintiff repeats and reiterates the allegations of paragraphs 1 through 33 herein.

35.     Hope's was the manufacturer of all of the Goods delivered to and installed at the Premises.

36.     As the manufacturer, Hope's had an implied duty to manufacture goods of a certain quality and caliber, and additionally, goods that worked for their intended purposes, as it represented to Plaintiff.

37. The Goods manufactured and installed at the Premises were not of the quality and caliber represented to Plaintiff. In addition, the Goods were substantially defective in that the windows began systemically to fracture over time starting in 2017.

38. Hope's breached the aforesaid duty when it manufactured the defective Goods windows and doors that began to self-destruct and supplied the Goods to Bright and Kusyk to fabricate and install at the Premises.

39. Earlier this year Plaintiff discovered that the quality and caliber of the Goods as manufactured were not as Hope's represented to him. In addition, Plaintiff discovered substantial nonconformities with the Goods – including the systemic fracturing of the windows.

40. As a result of Hope's breach as aforesaid, Plaintiff has incurred damages in an amount it would cost to cover the Goods in the marketplace which shall to be determined upon the trial of this action but presently believed to be in excess of $2,500,000 and Plaintiff demands judgment thereon.

AS AND FOR A FIFTH CAUSE OF ACTION
(Revocation of Acceptance)

41. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 40 herein.

42. Title VII of the C.G.S. applies to the sale of goods.

43. Plaintiff entered into the Contract with Bright under which Bright was obligated to Plaintiff to install goods purchased from Hope's.

44. Bright performed its obligation under the Contract by installing the Goods from Hope's in Plaintiff's home. The Goods, as provided to Bright by Hope's, were nonconforming in that the Goods were substantially defective.

45. Shortly after Plaintiff moved into the Premises, he discovered nonconformities in the Goods in the form of missing pieces, unevenness, and poor installation. Rather than stand by

8

the workmanship, defendants failed and refused to repair the damage. Plaintiff was forced to commence a legal action which was settled. None of the defects found at the time of the prior action included defective glass (which glass only started to burst spontaneously in 2017); therefore the defects, and damages therefrom, were only discovered in 2017.

46. The new nonconformities substantially impair the value of the Goods and indeed the Premises, since the Goods need to be replaced.

47. Plaintiff has revoked, and hereby revokes, his acceptance of the Goods insofar as they are cracking from improper manufacturing and not from their use by Plaintiff.

48. Although Plaintiff repeatedly requested defendants to inspect the defects, they only agreed to do so upon the condition that Plaintiff pays a down payment of $1,500 to be applied towards the cost of the replacement windows. Plaintiff paid the fee but has refused to accept defendants' cost bid for the replacement products and Bright and Kusyk have failed and refused to return the down payment made by Plaintiff.

49. Accordingly, Plaintiff demands a full refund of the price paid pursuant to the Contract and the other damages afforded to him under Title VII of the C.G.S., including incidental and consequential damages and attorneys' fees.

AS AND FOR A SIXTH CAUSE OF ACTION
(Conversion)

50. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 49 herein.

51. Plaintiff's has in all respects possessory rights or interest in the down payment.

52. Defendants Bright and Kusyk have wrongfully exercised dominion over the down payment in derogation of Plaintiff's right.

53. Despite due demand therefore, Bright and Kusyk have failed and refused to return the down payment.

54. Accordingly, Plaintiff is entitled to compensatory and punitive damages in an amount to be determined upon the trial of this action.

<u>AS AND FOR A SEVENTH CAUSE OF ACTION</u>
(CUPTA Violation)

55. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 54 herein.

56. By defendants' actions as set forth herein, including the business practice that resulted in the conversion complained of herein, defendants have violated the Connecticut Unfair Trade Practices Act.

57. Accordingly, Plaintiff is entitled to compensatory, punitive and statutory damages in an amount to be determined upon the trial of this action.

WHEREFORE, Plaintiff seeks judgment against defendant as follows:

(i) On the First Cause of Action a money judgment against defendants who are jointly, severally and strictly liable to Plaintiff for a judgment in an amount to be determined upon the trial of this action but presently believed to be in excess of $2,500,000;

(ii) On the Second and Third Causes of Action, for a judgment in the amount it would cost Plaintiff to cover the Goods in the marketplace which shall to be determined upon the trial of this action but presently believed to be in excess of $2,500,000 or to recover the difference between the value of the Goods as accepted and the value the Goods would have had if they had been as warranted;

(iii) On the and Fourth and Fifth Causes of Action for a judgment allowing Plaintiff to recover the entire purchase price paid for the Goods plus incidental and consequential damages and attorneys' fees in accordance with Title VII of the C.G.S.;

(iv) On the Sixth Cause of Action for compensatory, punitive and statutory damages in an amount to be determined upon the trial of this action; and

10

(iv)     On the Seventh Cause of Action for a judgment under CUPTA including compensatory, punitive and statutory damages in an amount to be determined upon the trial of this action.

(v)     An order granting to Plaintiff such other and further relief as to this Court may seem just and proper including an award of attorneys' fees and punitive damages.

FISHMAN DECEA & FELDMAN

By:   */s/ Thomas B. Decea*
    THOMAS B. DECEA
    Juris Number: 308099
84 Business Park Drive, Suite 200
Armonk, New York 10504
tdecea@dfdlawfirm.com
(914) 285-1400

*Attorneys for Plaintiff, Robert E. Crabtree, Jr.*