# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT E. CRABTREE, JR.,
     Plaintiff,

     v.

HOPE'S WINDOWS, INC., BRIGHT
WINDOW SPECIALISTS, INC., and
RICHARD KUSYK,
     Defendants.

No. 3:17-cv-01709 (VAB)

## RULING AND ORDER ON PENDING MOTIONS

Robert E. Crabtree, Jr. ("Plaintiff"), has sued Hope's Windows, Inc. ("Hope's Windows") and Bright Window Specialists, Inc. ("Bright") and Richard Kusyk ("Defendant") (collectively the "Bright Defendants") for breach of Article 2 of Connecticut's Uniform Commercial Code, Conn. Gen. Stat. § 42a-2-101, *et seq.*, breach of contract, breach of implied warranty, revocation of acceptance, conversion, and violation of the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. § 42a-110a *et seq.*

The Bright Defendants move to dismiss the case and also move for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Mr. Crabtree moves to amend the First Amended Complaint under Rule 15 of the Federal Rules of Civil Procedure and for a default judgment against Hope's Windows under Rule 55.

Hope's Windows, after oral argument had already been heard on the Bright Defendants' motion to dismiss, now moves to dismiss the lawsuit against it.

For the reasons that follow, the Bright Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part. Mr. Crabtree's claims under Conn. Gen. Stat § 42a-2-101 *et seq.* and

for breach of contract, breach of implied warranty, and revocation and acceptance are all

**DISMISSED**. The Court, however, lacks subject-matter jurisdiction over the remainder of Mr.

Crabtree's claims against the Bright Defendants and **REMANDS** them to Connecticut Superior

Court. The Bright Defendant's motion for sanctions is **DENIED**.

Mr. Crabtree's motion to amend the First Amended Complaint and for default judgment

are both **DENIED**.

Hope's Windows' motion to dismiss is **DENIED**.

# I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Mr. Crabtree owns the property located at 918 North Street in Greenwich, Connecticut

("the Property"). First Am. Compl. ¶ 1, ECF No. 19. Hope's Windows, Inc. ("Hope's Windows

") manufactures custom windows, doors, and other architectural products. *Id.* ¶ 4.[1] Their

windows allegedly come with a lifetime warranty from manufacturer defects. *Id.* ¶ 5.[2] Bright

Windows Specialists, Inc. ("Bright") is allegedly Hope's Windows's sole regional sales

representative for Greenwich, Connecticut, and Mr. Kusyk is Bright's owner. *Id.* ¶ 3.[3] This

dispute arose when windows that Bright installed in Mr. Crabtree's home allegedly began to

crack spontaneously after installation.

## A.    Factual Allegations

Mr. Crabtree bought windows and doors from Hope's Windows through the Bright

Defendants in December 2005. First Am. Compl. ¶ 6. Mr. Crabtree paid Bright, by and through

---

[1] The First Amended Complaint includes two paragraphs numbered four. Here, the Court references the first paragraph numbered four.

[2] The First Amended Complaint includes two paragraphs numbered five. Here, the Court references the first paragraph numbered four.

[3] The First Amended Complaint includes two paragraphs numbered three. Here, the Court references both paragraphs.

his general contractor, approximately $1,000,000 to install the windows and doors. *Id.* ¶ 7. In

2007, ninety-five percent of the windows and doors had allegedly been installed, and, by 2008,

Mr. Crabtree moved into the home. *Id.* ¶ 9. In the following months, Mr. Crabtree allegedly

discovered that windows and door frames were defective with missing frame pieces, improperly

set window sills and doors that rattled, and hardware missing or improperly installed. *Id.* At the

time, the Amended Complaint alleges that Mr. Crabtree had no knowledge of defects in the glass

itself. *Id.*

In a complaint filed in Connecticut Superior Court, Judicial District of Stamford/Norwalk

at Stamford on February 3, 2010, Mr. Crabtree sued Defendants regarding the windows and

doors they installed at the Property. *See generally* Feb. 3, 2010, Compl. ¶ 10, Bright's Br., Ex. B,

ECF No. 20 at 18. That complaint included four causes of action, alleging (1) products liability;

(2) breach of implied warranty; (3) revocation of acceptance; and (4) a violation of the CUTPA.

*See generally* Feb. 3, 2010, Compl. With respect to the first cause of action, the complaint

alleges that Bright installed windows and doors from Hope's Windows that were "negligently

and defectively manufactured." *Id.* ¶ 10; *accord id.* ¶ 12 ("Defendant Hope's breached its duty

by negligently and defectively manufacturing the Goods which are inferior and unusable for their

intended purpose.").

Mr. Crabtree, Hope's Windows, and the Bright Defendants settled that case. *See*

*generally* Settlement Agreement ("Agreement"), Bright Br., Ex. C, ECF No. 20 at 28. The

agreement provides: "In full and final satisfaction of any and all claims that CRABTREE has or

may have against HOPE'S and BRIGHT, on or about May 17, 2010, . . . BRIGHT shall perform

the remaining 'punch list' work, . . . and any additional replacement of materials or repairs that

HOPE'S and CRABTREE agree may be required to be performed so that the installation of the

windows and doors and deemed by HOPE and CRABTREE to be complete in all respects . . . ." *Id.* § 1(a). The Agreement also provided for a general release, under which Mr. Crabtree "release[d] and forever discharge[d] BRIGHT . . . from all actions, claims and causes of action, including, but not limited to, all claims relating to any work performed by BRIGHT . . . which against BRIGHT . . . , CRABTREE . . . ever had, now have or hereafter can, shall or may, have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of this RELEASE." May 17, 2010, General Release, Bright Br., Ex. D, ECF No. 20 at 35. Finally, the Agreement also included a merger clause that provides that all agreements between the parties were expressed through the written agreement, and may only be modified by written agreement signed by the parties. Settlement Agreement §§ 6–7.

In February 2017, the first of five windows at the Property allegedly "spontaneously fractured like an automobile windshield." First Am. Compl. ¶ 11. The First Amended Complaint asserts that, later that summer, four additional windows "spontaneously burst in the same manner." *Id.* These windows were allegedly purchased and installed under the $1,000,000 contract between Mr. Crabtree and Bright that were the subject of the 2010 litigation. *Compare id.* ¶ 11 ("The defective windows were purchases and installed under the $1,000,000 Contract."), *with* Feb. 3, 2010, Compl. ¶ 6 ("By the time the doors and windows were installed, the contract price had increased to almost $1,000,000."). The First Amended Complaint asserts that the cause of the fractures was a manufacturing defect. *Compare* Compl. ¶ 21 ("Bright installed Hope's windows and doors in the Premises[,] however[,] the windows and doors [] were negligently and defectively manufactured and spontaneously fracture."), *with* Feb. 3, 2010, Compl. ¶ 12 ("Hope's breached its duty by defectively manufacturing the Goods which are inferior and unusable for their intended purpose.").

Mr. Crabtree allegedly contacted Mr. Kusyk and Hope's Windows to request that Defendants replace the defective windows and doors, which Mr. Kusyk's allegedly had stated would "last a lifetime." *Id.* ¶ 13. The Complaint asserts that, knowing that Mr. Crabtree had no other option than to deal with Bright, Mr. Kusyk agreed to inspect the defective windows only after Mr. Crabtree paid a "down payment fee" in the sum of $1,500, which Mr. Crabtree paid. *Id.* After inspecting the windows, Mr. Kusyk allegedly said he could replace the windows for a minimum of $3,500 per window. *Id.* Mr. Crabtree declined and, despite Mr. Crabtree's demand, Mr. Kusyk refused to return to Mr. Crabtree the $1,500 "deposit" for the windows. *Id.* ¶ 15.

**B.      Procedural History**

On September 26, 2017, Mr. Crabtree sued Defendants in Connecticut Superior Court at the Judicial District of Stamford/Norwalk at Stamford. ECF No. 1-2. The Bright Defendants subsequently removed the case to this Court under 28 U.S.C. § 1445. ECF No. 1. The Court has jurisdiction under 28 U.S.C. § 1332.

On January 16, 2017, Mr. Crabtree amended the Complaint. ECF No. 19. The First Amended Complaint remains operative. The First Amended Complaint asserts six causes of action: (1) a violation arising out of Article 2 of Connecticut's Uniform Commercial Code, Conn. Gen. Stat. § 42a-2-101, *et seq.*; (2) breach of contract; (3) breach of implied warranty;[4] (4) revocation of acceptance; (5) conversion;[5] and (6) violation of the CUTPA, Conn. Gen. Stat. § 42-110a *et seq.*

---

[4] Mr. Crabtree asserts this claim solely against Hope's Windows.

[5] Both this claim and Mr. Crabtree's claim under the CUTPA are asserted against the Bright Defendants only.

The Bright Defendants now move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. The Bright Defendants also move for sanctions under Rule 11 of the Federal Rules of Civil Procedure. ECF No. 31.

On March 1, 2018, Mr. Crabtree moved for entry of default judgment against Hope's Windows and also now moves to amend the First Amended Complaint. ECF No. 29.

The Court heard oral argument on April 12, 2018, and Hope's Windows did not appear. ECF No. 33.

On April 13, 2018, Hope's Windows moved to dismiss for failure to state a claim. ECF No. 35.

## II. STANDARD OF REVIEW

### A. Federal Subject Matter Jurisdiction

District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). CASE CITATION.

However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) ("[W]hen a district court correctly dismisses all federal claims for lack of subject–matter jurisdiction . . . the district court is thereby precluded from exercising supplemental jurisdiction over related state–law claims.").

## B.       Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court must take the factual allegations in the complaint as true, *Ashcroft*, 556 U.S. at 678, and view the inferences drawn therefrom in the light most favorable to the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limit its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### C.     Motion to Amend

After a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[6] Fed. R. Civ. P. 15(a)(2). Rule 15, which calls for leave "when justice so requires," has been applied liberally in order to "facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (*quoting Conley v. Gibson*, 355 U.S. 41, 48 (1957)). Courts usually consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" when deciding whether to grant leave to amend. *Foman*, 371 U.S. at 182.

Although Rule 15 is applied liberally, "Rule 16(b) may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007);

---

[6] On January 26, 2018, Mr. Crabtree filed a Second Amended Complaint. ECF No. 21. Mr. Crabtree did not seek Defendants' consent or seek leave of the Court before filing the January 26, 2018, Second Amended Complaint. This complaint is therefore not properly before the Court.

Fed. R. Civ. P. 16(b). Under the Rule 16(b) standard, a party may obtain a modification of the scheduling order only "upon a showing of good cause." *Id.*

### D.    Motion for Sanctions under Federal Rule of Civil Procedure 11

Arguments that are presented to "harass, cause unnecessary delay, or needlessly increase the cost of litigation," or whose "claims, defenses, and other legal contentions are [un]warranted by existing law or [are supported by []frivolous argument[s], for extending, modifying, or reversing existing law or for establishing new law . . . the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(b)–(c).

Rule 11 provides, in pertinent part:

> (2) ***Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c). "These procedural protections are intended to reduce the number of motions for sanctions and to provide opportunities for parties to avoid sanctions altogether." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 141–42 (2d Cir. 2002) (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327 (2d Cir.1995)).

### E.    Motion for Default Judgment

Federal Rule of Civil Procedure 55 provides a two-step process to obtain a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step is to seek entry of default. *Id.* "When a party against whom affirmative relief is sought has failed to plead or

otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended." *Id*. "Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages." *Coles v. Lieberman, Michaels & Kelly, LLC*, No. 10-cv-484S, 2011 WL 3176467, at *1 (W.D.N.Y. July 27, 2011) (citation omitted); see also *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d 105, 108 ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.") (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.")).

The second step is to seek a default judgment under Rule 55(b). "Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person. *See* Fed. R. Civ. P. 55(b)(1). 'In all other cases,' Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). Under Rule 55(b)(2), a court must determine whether liability is appropriate, based on the facts alleged in the Complaints. *Coles*, 2011 WL 3176467, at *1 (citation omitted); accord *United States v. Bunbury*, 15-cv-3764 (JS), 2015 9050581, at *1 (E.D.N.Y. Dec. 15, 2015) ("[I]n determining a motion for default judgment, the Court is responsible for ensuring that the pleadings provide an appropriate basis for liability." (citing *United States v. Kemp*, No. 15-cv-02419 (PKC), 2015 WL 6620624, at *2 (E.D.N.Y. Oct. 30, 2015))). The court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: [] conduct an accounting; []

determine the amount of damages; [] establish the trust of any allegation by evidence; or [] investigate any other matter." Fed. R. Civ. P. 55(b)(2).

## III.  DISCUSSION

### A.  Motion to Dismiss the First Amended Complaint

Mr. Crabtree brings two sets of claims: contract claims, relating to the Bright Defendant's installation of Hope's Windows' windows at the Property, and tort and statutory law claims relating to Mr. Kusyk allegedly charging Mr. Crabtree a "down payment fee" to inspect the allegedly defective windows, Am. Compl. ¶ 13, and Mr. Kusyk's alleged refusal to return this fee when Mr. Crabtree declined to pay to have the windows replaced. *Id.* 14–15. The Bright Defendants argue that the Settlement Agreement and Release bar Mr. Crabtree's claims altogether. They also argue that Mr. Crabtree's claims are time-barred.

#### 1.  The Settlement Agreement and Release

Mr. Crabtree argues that these contract, tort, and CUTPA claims are distinct from the claims covered by the Settlement Agreement and Release. The Court disagrees with respect to the contract claims and agrees with respect to the tort claim of conversion and the related claim under CUTPA.

Under Connecticut law, a court must construe the language of a written contract to give effect to "the intent of the parties," which a court determines "from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 290 (2004) (quoting *Poole v. City of Waterbury*, 266 Conn. 68, 87–88 (2003)). In doing so, a court must accord the language "common, natural, and ordinary meaning and usage where it can be sensibly applied to

the subject matter of the contract." *Id.* If the language is "clear and unambiguous, the contract is to be given effect according to its terms." *Id.*

"If the language of the contract is ambiguous, the Court must defer to a jury to determine the intent of the parties." *Exec. Airlines v. Elec. Boat Corp.*, 271 F. Supp. 2d 392, 399 (D. Conn. 2003) (citing *Topf v. Warnaco, Inc.*, 942 F. Supp. 762, 767 (D. Conn. 1996)). "[W]here there is definitive contract language, the determination of what the parties intended by their contractual communications is a question of law. . . ." *Schwartz v. Family Dental Grp., P.C.*, 106 Conn. App. 765, 771 (2008) (quoting *Tallmadge Bros. v. Iroquois Gas Transmission Sys.*, 252 Conn. 479, 495 (2000); *cf. Palozie v. Palozie*, 283 Conn. 538, 548, n. 8 (2007) ("Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant."). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in the contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Schwartz*, 106 Conn. App. at 775 (quoting *Tallmadge Bros., Inc.*, 252 Conn. at 498)). "In giving meaning to the terms of a contract, the court should construe the agreement as a whole, and its relevant provisions are to be considered together." *Leichter v. Lebanon Bd. of Educ.*, 917 F. Supp. 2d 177, 185 (D. Conn. 2013) (citation omitted).

A contract that is "commercial in nature and [] made by sophisticated commercial parties with the advice of counsel during an extensive drafting process," may bear sufficient indicia to raise a rebuttable presumption of definiteness. *Tallmadge Bros.*, 252 Conn. at 496–97. Here, the Settlement Agreement and Release arise from a commercial dispute and were drafted with the advice of counsel during the course of an adversarial proceeding in Connecticut state court. The Court's determination of the party's intent, therefore, is a question of law. *See id.* at 498

("[B]ecause the settlement agreements are commercial contracts containing definitive language, the determination of the parties' intent is a question of law.").

### a. Section 42a of the Connecticut General Statutes (Count One)[7]

The terms of the Settlement Agreement and Release are unambiguous and unequivocal and apply to the contract claims at issue here. The release provides that Mr. Crabtree "release[d] and forever discharge[d] BRIGHT . . . from . . . all actions, claims and causes of action, including, but not limited to, all claims relating to any work performed by BRIGHT . . . ." May 17, 2010, General Release. As a result, Mr. Crabtree relinquished "all suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and

---

[7] On their face, Counts Two through Four of the Amended Complaint are not viable as a matter of law. In addition to a claim under Conn. Gen. Stat. § 42a-2-101 *et seq.* (Count One), Mr. Crabtree asserts common law breach of contract (Count Two), breach of implied warranty (Count Three), and revocation of acceptance (Count Four), all of which have been codified under Title 42a of Connecticut's General Statutes. *See* Conn. Gen. Stat. § 42a-2-101, *et seq.* Title 42a is Connecticut's adopted version of the Uniform Commercial Code ("UCC") and governs "contract[s] for sale." *Id.* The UCC preempts common law claims to the extent that its provisions provide a directly applicable body of statutory law. *See Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 146 Conn. App. 169, 181–82 (2013) (noting that "Official Comment 2 to § 1-103 of the UCC explains that 'while principles of common law and equity may *supplement* provisions of the [UCC], they may not be used to *supplant* its provisions . . . .'"). Breach of contract implied warranty and revocation of acceptance are part of this broader statutory scheme. *See, e.g.*, Conn. Gen. Stat. § 42a-2-607(3) ("Where a tender has been accepted [] the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."); *id.* § 42a-2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose."); *id.* § 42a-2-607(2) ("Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured . . . .").

Even if the Court were to construe Mr. Crabtree's claims for breach of contract and implied warranty and revocation of acceptance as arising under their statutory analog, they would remain barred by the Settlement Agreement and Release.

demands whatsoever, in law, admiralty or equity," that Mr. Crabtree "ever had, now have or hereafter can, shall or may, have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE." *Id.* These terms are broad, but they are not uncertain.

The First Amended Complaint brings claims expressly related to the installation of Hope's Windows allegedly defective windows. *See, e.g.*, Am. Compl. ¶ 23 ("Hope's breached its duty by negligently and defectively manufacturing the Goods which are inferior and unusable for the intended purposes."). At issue is a "manufacturing defect" that caused windows to "spontaneously fracture[]," which, by its unambiguous and unequivocal terms, the release embraces. Am. Compl. ¶ 11–12.

Mr. Crabtree relies on *Muldoon v. Homestead Insulation Co.*, 231 Conn. 469 (1994), for the proposition that a settlement agreement cannot bar "future" claims. But Mr. Crabtree mischaracterizes the nature of his claims. Although "[t]he usual general release [] is not ordinarily construed to include in its coverage claims based upon occurrences which have their beginning after the instrument is executed," under Connecticut law, release language covering "future claims" and "unknown claims" "is ordinarily construed to cover [] inchoate claims that are in being at the time of release but which have not yet manifested themselves." *Muldoon v. Homestead Insulation Co.*, 231 Conn. 469, 481–82 (1994) (quoting H. Havighurst, "Principles of Construction and the Parol Evidence Rule as Applied to Releases," 60 Nw. U. L. Rev. 599, 611, 616 (1965)).

If, as alleged, it was not until February 2017 that the first of five windows at the Premises spontaneously fractured "like an automobile windshield," Am. Comp. ¶ 11, the alleged defects in these windows were "inchoate . . . at the time of release," *Muldoon*, 231 Conn. at 481–82. The

Amended Complaint alleges as much. *See* Am. Compl. ¶ 12 ("[T]he only possible cause of the fractures . . . is the manufacturing defect."); *id.* ¶ 23 ("Hope's breached its duty by negligently and defectively manufacturing the Goods . . . ."); Sec. Am. Compl. ¶ 25 ("[T]he defect existed at the time of the sale . . . ."). Mr. Crabtree argues that "every claim . . . is based upon facts which occurred well after the date of the release." Pl.'s Opp'n. Br. at 6, ECF No. 29-6. But Mr. Crabtree has alleged a breach of contract claim related to a manufacturing defect, a defect that had to have existed at the time the windows were manufactured. Thus, Mr. Crabtree seeks to recover for damage that is the result of the alleged manufacturing defect—it is not the defect itself. *Cf. Catz v. Rubenstein*, 201 Conn. 39, 44 (1986) ("A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence.").

Even if the windows only began to crack years after the parties entered into the Settlement Agreement, because the cracking is allegedly the result of manufacturing error, whether and when Mr. Crabtree knew of the manufacturing flaw is immaterial, because these alleged defects are "future claims" contemplated by the Settlement Agreement and Release. *See Muldoon*, 231 Conn. at 481–82 ("[L]anguage covering "future claims" and "unknown claims" in releases is ordinarily construed to cover only inchoate claims that are in being at the time of release but which have not yet manifested themselves.").[8]

Mr. Crabtree also argues that because he purchased Hope's Windows' doors and windows in reliance on Mr. Kusyk's assurance that the goods would be free of defect and last a

---

[8] The Connecticut Supreme Court's more recent decision in *Tallmadge* is also no help to Mr. Crabtree's legal argument. In *Tallmadge*, the court held that a release provision that precluded liability for the defendant "by reason of any matter, cause or thing whatsoever, incident to the construction of [a pipeline], and any acts in connection therewith," barred not the plaintiff from recovering for "incidental destruction not contemplated by the parties at the time when the settlement agreements were drafted." *Tallmadge Bros.*, 252 Conn. at 499. *Tallmadge* succeeds *Muldoon* and may very well have, *sub silentio*, overruled it, but, because Mr. Crabtree complains of an inchoate defect, the Court need not, and does not, decide whether *Tallmadge* and *Muldoon* are in conflict.

lifetime, Mr. Crabtree is entitled to pursue his claims. Am. Comp. ¶ 22. This argument also falls short. The Settlement Agreement and Release contains a merger clause that states: "All agreements and understandings by and between the Parties are embodied and expressed herein, and this Agreement states the entire agreement of the Parties hereto and supersedes all prior agreement and contemporaneous negotiations and agreements, oral or written." Settlement Agreement § 6. Absent questions of unequal bargaining power, fraud, duress, or a contract in violation of public policy, none of which are at issue here, the merger clause is "conclusive evidence" of the parties intent to fully integrate the agreement, and this Court's consideration of extrinsic evidence—*i.e.*, an alleged lifetime guarantee not included in the terms of the Settlement Agreement and Release—is improper. *Tallmadge Bros.*, 252 Conn. at 505; *see also Weiss v. Smulders*, 313 Conn. 227, 248–49 (2014) ("Ordinarily, a merger clause provision indicates that the subject agreement is completely integrated, and parol evidence is precluded from altering or interpreting the agreement." (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir.1997))); *Perricone v. Perricone*, 292 Conn. 187, 194 (2009) ("[T]he unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence." (citation omitted)).

Because the Settlement Agreement and Release reaches all legal actions "including, but not limited to, all claims relating to any work performed" by Bright, Mr. Crabtree's claims under § 42a (Count One) and for breach of contract (Count Two), breach of implied warranty (Count Three), and revocation and acceptance (Count Four), are foreclosed by the parties' earlier settlement. May 17, 2010, General Release. The Court therefore dismisses these claims.

### b. Common Law Conversion (Count Five) and the Connecticut Unfair Trade Practices Act (Count Six)

Having dismissed all of Mr. Crabtree's claims against the Bright Defendants with the exception of his claim of conversion and under the CUTPA, only the amount of the alleged down payment—*i.e.*, $1,500—remains in dispute. As a result, the Court turns to whether this Court may retain jurisdiction of Mr. Crabtree's remaining two claims. It may not.

Although neither party has suggested that the Court lacks jurisdiction over the subject, the Court has "an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) (citation omitted). "[T]he existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal." *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009). Typically, the amount in controversy is established by the face of the complaint and the dollar-amount actually claimed. *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961); *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 (2d Cir. 2002).

"The party asserting federal jurisdiction must demonstrate federal subject matter jurisdiction by competent proof." *Royal Ins. Co. v. Jones*, 76 F. Supp. 2d 202, 204 (D. Conn. 1999) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). "Only where it 'appear[s] to a legal certainty that the claim is really less than the jurisdictional amount' can the court dismiss an action for lack of subject matter jurisdiction." *Fallstrom v. L.K. Comstock & Co.*, No. 3:99-cv-952 (AHN), 1999 WL 608835, at *1 (D. Conn. July 13, 1999) (quoting *Saint Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 288–89 (1938)).

However, "[r]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Id.* (quoting *Leslie v. Banctec Serv. Inc.*, 928 F. Supp. 341, 347 (S.D.N.Y. 1996) (citing *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973)).

Here, there is no issue concerning diversity of citizenship, but in the First Amended Complaint, Mr. Crabtree has put at issue the so-called "down payment fee," which he claims amounts to $1,500. He seeks to recover unspecified compensatory damages, punitive damages, and statutory damages. Am. Compl. ¶ 41(iv);[9] *see also Label Sys. Corp. v. Aghamohammadi*, 270 Conn. 291, 335 (2004) ("[P]punitive damages are limited to the costs of litigation less taxable costs, but, within that limitation, the extent to which they are awarded is in the sole discretion of the trier." (citing *Chykirda v. Yanush*, 131 Conn. 565, 568 (1945)). Mr. Crabtree also seeks punitive damages under CUTPA. *Id.* ¶ 41(iv). A court may consider prospective punitive damages and attorney fees under CUTPA to determine whether this cases meets the jurisdictional threshold under 28 U.S.C. § 1332, *Ulbrich v. Groth*, 310 Conn. 375, 449–50 (2013) (permitting "multiple damages" under the punitive damages provision of CUTPA, which are distinct the award of reasonable attorney fees and costs under the fees provision of CUTPA); *Perez v. Metro. Prop. & Cas. Ins. Co.*, No. 3:14-cv-01565 (CSH), 2014 U.S. Dist. LEXIS 178649, at *11 (D. Conn. Dec. 31, 2014) ("[B]ecause both punitive damages and attorneys' fees may be recoverable as a matter of right under CUTPA, they may be considered by the court when determining whether a case involves . . . the jurisdictional minimum." (citing *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir.1991) ("[I]f punitive damages are permitted under

---

[9] The First Amended Complaint includes two paragraphs numbered forty-one. Here, the Court references the second paragraph numbered forty-one.

the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied.")).

Mr. Crabtree asserts a claim of conversion and a violation of CUTPA solely against the Bright Defendants. *See, e.g.*, Am. Compl. ¶ 43 ("Defendant's [*sic*] Bright and Kusyk have wrongfully exercised dominion over the down payment . . . ."); *id.* ¶ 42 ("By defendants' actions . . . including the business practice that resulted in conversion . . . have violated the Connecticut Unfair Trade Practices [Act]."); Pl.'s Opp'n Br. at 9 (alleging that the Bright Defendants' attempt to "extort" $1,500 from Mr. Crabtree is a "stark violation" of CUTPA and that "the balance" of the CUTPA claim derives from Mr. Kusyk inflating the cost per window as part of a "novel defalcation scheme" that would result in Mr. Crabtree declining to replace them and allow Mr. Kusyk to retain the $1,500). On the face of Amended Complaint, Mr. Crabtree has put $1,500 in money damages related to the Bright Defendants at issue.

The Court lacks jurisdiction over this these claims. Even assuming Mr. Crabtree is entitled to compensatory, punitive, and statutory damages, it is not at all obvious what "competent proof," if any, exists that at least $75,000 are in dispute. *Jones*, 76 F. Supp. 2d at 204.

It is immaterial for federal subject matter jurisdiction purposes for the Bright Defendants that the other defendant, Hope's Windows, may remain in this case. As the party asserting federal jurisdiction, Mr. Crabtree may not aggregate claims severally alleged against the Bright Defendants and a co-defendant to satisfy the jurisdictional threshold under 28 U.S.C. § 1332(b). *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 933 (2d Cir. 1998) ("It is well established that for diversity actions the rule applicable to several plaintiffs having separate claims, that each must represent an amount sufficient to give the court jurisdiction, is

equally applicable to *several* liabilities of different defendants to the same plaintiff." (internal quotation marks omitted) (quoting *Walter v. Northeastern R.R. Co.*, 147 U.S. 370, 374 (1893); *see also Snyder v. Harris*, 394 U.S. 332, 338 (1969) (noting that the 28 U.S.C. § 1332 does not confer jurisdiction "where the required amount in controversy can be reached only by aggregating separate and distinct claims"); *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1422 (2d Cir. 1997) (listing cases of the "non-aggregation" rule consistently across a variety of contexts); *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 870, 874 (S.D.N.Y. 1995) ("When liability among defendants is several, a plaintiff cannot aggregate its claims against individual defendants in order to satisfy the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332. It must satisfy the jurisdictional amount with respect to each defendant." (citing *Dendinger v. Maryland Casualty Co.*, 302 F.2d 850, 851 (5th Cir.1962))); 15 *Moore's Federal Practice* § 102.108[2] (Matthew Bender 3d ed. 2018) ("A plaintiff must allege that the amount in controversy is in excess of the jurisdictional amount against each defendant unless the plaintiff's claims against the defendants are common and undivided so that the defendant's liability is properly characterized as joint and not several.").

Out of "respect for the limited jurisdiction of the federal courts," the Court therefore remands Mr. Crabtree's remaining claims as to the Bright Defendants—for conversion and a violation of CUTPA to Connecticut Superior Court. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks omitted); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Having found that Mr. Crabtree's claims related to the manufacturing and installation of the windows have been extinguished and this Court lacks jurisdiction to hear the remaining

claims against the Bright Defendants, the Court need not, and does not, address the Bright Defendants' statute of limitations argument.

### B. Amending the First Amended Complaint

Mr. Crabtree seeks leave to file a Second Amended Complaint. ECF No. 29-6. The Proposed Second Amended Complaint adds a products liability claim under Section 52-572m of the Connecticut General Statutes.[10] The Bright Defendants argue that amendment would be futile. The Court agrees.

At the outset, Mr. Crabtree's motion is untimely under the scheduling order, *see* ECF No. 17 ("Amended Pleadings due by 1/19/2018."), and he has not moved to amend or shown good cause to amend the scheduling order, which is a sufficient ground upon which to deny the motion. *See Kassner*, 496 F.3d at 243 ("Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed.").

Even if Mr. Crabtree had shown good cause, amendment would be futile. The sole new claim in the proposed Second Amended Complaint is one of products liability, which expressly states that the alleged defect existed "at the time of the sale." Sec. Am. Comp. ¶ 25. Mr. Crabtree purchased the windows in December 2005. Am. Compl. ¶ 6. In Mr. Crabtree's 2010 lawsuit for which the 2010 Settlement Agreement and Release resolved, Mr. Crabtree also brought a

---

[10] In his memorandum of support to his motion to amend the First Amended Complaint, Mr. Crabtree states that the proposed Second Amended Complaint seeks to add a claim of products liability. Pl.'s Br. at 1, ECF 29-6. The proposed Second Amended Complaint, however, makes reference to Conn. Gen. State 572. Sec. Am. Compl. ¶¶ 20–26. There is no such statute. The Court presumes this to be to be a scrivener's error, and that Mr. Crabtree meant to assert a claim under Conn. Gen. Stat § 52-572m *et seq.*

The proposed Second Amended Complaint also jettisons Mr. Crabtree's claims under § 42a, breach of contract, and revocation of acceptance.

products liability claim, alleging that Hope's "windows and doors were defective" and that they had been "negligently and defectively manufactured." Feb. 3, 2010, Compl. ¶¶ 8, 10. As discussed above, *see* Part III.A.1.a, the Settlement Agreement and Release forever discharged Bright from "all actions, claims, and causes of actions . . . from the beginning of the world to the day of the date of this RELEASE." The products liability claim in the proposed Second Amended Complaint, the sole material difference between it and the First Amended Complaint, is comfortably within the scope of the Settlement Agreement and Release.

Mr. Crabtree, however, also argues that, because his products liability claim only accrues as of February 2017, when he discovered the manufacturing defect in the windows, *i.e.*, when they allegedly began to shatter spontaneously, the claim is not precluded by the Settlement Agreement and Release. The Court disagrees.

Under Connecticut law, a product liability claim becomes stale unless brought within threes year from the date when the injury "is first sustained or discovered or in the exercise of reasonable care should have been discovered." *Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir. 1992) (quoting Conn. Gen. Stat. § 52–577a). "In Connecticut, a cause of action accrues when a plaintiff suffers actionable harm." *Id.* (quoting *Champagne v. Raybestos–Manhattan*, 212 Conn. 509, 521 (1989)). "Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." *Champagne*, 212 Conn. at 521 (citing *Catz*, 201 Conn. at 44 ("A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence." (citation omitted))). Accrual, however, requires not "the fullest manifestation" of the actionable harm, but merely "*some form*" of it. *Gnazzo*, 973 F.2d at 138 (quoting *Lambert v.*

*Stovell*, 205 Conn. 1, 7 (1987)); *K.E. v. GlaxoSmithKline LLC*, No. 3:14-cv-1294 (VAB), 2017 WL 440242, at *20 (D. Conn. Feb. 1, 2017) (citation omitted).

As discussed above, *see supra* Part III.A.1.a, the Settlement Agreement and Release forever discharged Bright from "all actions, claims, and causes of actions . . . from the beginning of the world to the day of the date of this RELEASE." The products liability claim in the proposed Second Amended Complaint, as alleged, takes as its factual predicate a manufacturing defect that "existed at the time of the sale." Sec. Am. Compl. ¶ 25. Mr. Crabtree's February 2010 complaint alleges a products liability claim for windows and doors Mr. Crabtree "discovered" were "defective" because they did not "operate properly" and "are generally defective in numerous and substantial other ways." Feb. 3, 2010, Comp. ¶ 8. And, as Mr. Crabtree's counsel rightly conceded at oral argument, the spontaneous cracking of the windows must be a manifestation of a design flaw in the window frames. As discussed above and further addressed below, however, the Settlement Agreement and Release extinguished precisely this type of claim.

Indeed, under *Muldoon*, the Settlement Agreement and Release extends even to a claim, such as Mr. Crabtree's products liability claim, that was "inchoate . . . at the time of release" but had yet to manifest itself. *Muldoon*, 231 Conn. at 481–82. Furthermore, following *Muldoon*, the Connecticut Supreme Court in *Tallmadge* specifically rejected the argument Mr. Crabtree now makes, that: "[A] release, even one referencing 'future' claims, does not release claims which arise after the date of the release." Pl.'s Opp'n Br. at 5; *see Tallmadge, L.P.*, 252 Conn. at 499 (rejecting the trial court's conclusion that, "[i]n spite of this seemingly unambiguous and unequivocal language of the release," the release applied only to direct construction damages, and that the damage area provided for in the release was "incidental destruction not contemplated

by the parties at the time when the settlement agreements were drafted" and liability, therefore, attached).

Given that the Release bars Mr. Crabtree's claim of products liability, the Court denies Mr. Crabtree's motion to amend because, even if timely, it would be futile.

### C.     Rule 11 Sanctions

The Bright Defendants move for sanctions under Fed. R. Civ. P. 11(b), arguing that the claims have been discharged and are otherwise time barred. Mr. Crabtree, they argue, commenced this action in bad faith and for improper purposes, and his factual contentions do not possess any evidentiary support. Mot. for Sanctions, ECF No. 31.

"It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Because Rule 11 sanctions are not a judgment on the merits and, instead, "requires the determination of a collateral issue, . . . [s]uch a determination may be made after the principal suit has been terminated." *Id.* at 396.

Although the Bright Defendants argue that Mr. Crabtree received notice, Rule 11(c)(2) makes plain that the "motion" must be served under Rule 5, "but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). The Bright Defendants sent Mr. Crabtree a "Rule 11 letter affording Plaintiff a chance to withdraw his action," which they reiterated by e-mail following Mr. Crabtree's filing of the First Amended Complaint. A letter and an e-mail, however, do not constitute a motion. The Court therefore denies the Bright Defendant's motion for sanctions as procedurally flawed. *See Costello v. Wells Fargo Bank Nat'l Ass'n*, No. 16-cv-1706 (VAB),

2017 WL 3262157, at *18 (D. Conn. July 31, 2017) (denying a motion under Rule 11(c)(2) as procedurally infirm).

### D. Default Judgment

Mr. Crabtree has moved for a default judgment against Hope's Windows. Mr. Crabtree, however, failed to move for an entry of default and his motion for default judgment thus is procedurally improper. *See New York v. Green*, 420 F.3d at 104 (noting that the first step in seeking a default judgment is to seek entry of default). Moreover, Hope's Windows has since filed a motion to dismiss, because it ostensibly plans to participate in the litigation of this case. ECF No. 35. The Court therefore denies the motion.

### E. Hope's Motion to Dismiss

Although Christopher J. Molyneaux had already appeared as counsel for Hope's Windows,[11] Hope's Windows only moved to dismiss Mr. Crabtree's First Amended Complaint on April 13, 2018, after the Court heard oral argument on the pending motion to dismiss filed by the Bright Defendants. ECF Nos. 33, 35. Hope's Windows' motion is untimely. *See* Dec. 20, 2017, Scheduling Order, ECF No. 17 ("Amended Pleadings due by 1/19/2018").

A scheduling order issued under Fed. R. Civ. P. 16 "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A finding of good cause depends on the diligence of the moving party." *Darowski v. Wojewoda*, No. 3:15-cv-803 (MPS), 2018 WL 2122822, at *2 (D. Conn. May 8, 2018) (quoting *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003)).

---

[11] Because this case was removed from state court, Mr. Molyneaux has been on the docket and receiving notification of filings by way of the United States Postal Service or e-mail for the duration of the proceedings before this Court.

Here, Hope's Windows' motion is entirely unsupported by good cause for its late filing. Not only has Hope's Windows offered no explanation for its late submission, but, given that Hope's Windows had appeared in the case and failed to file a responsive pleading within the time set out in the standing Scheduling Order or to appear at the hearing on April 12, 2018, ECF No. 33, the "diligence of the moving party" is lacking. *Darowski*, 2018 WL 2122822, at *2. The Court therefore denies Hope's Windows' motion and directs it to file an Answer in this case. *Cf. Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. . . . [A] finding of "good cause" depends on the diligence of the moving party." (citations omitted)).

## VI.     CONCLUSION

For the foregoing reasons, the Bright Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part. Mr. Crabtree's claims under Conn. Gen. Stat § 42a-2-101 *et seq.* and for breach of contract, breach of implied warranty, and revocation and acceptance are all **DISMISSED**. Mr. Crabtree's remaining claims against the Bright Defendants are **REMANDED** to Connecticut Superior Court.

The Bright Defendants' motion for sanctions is **DENIED**. Mr. Crabtree's motion to amend the First Amended Complaint and for default judgment are both **DENIED**. And Hope's Windows' motion to dismiss is **DENIED**.

The Clerk of the Court is instructed to remand the case against Bright Window Specialist, Inc., and Richard Kusyk to Connecticut Superior Court, Judicial District of Stamford/Norwalk at Stamford, and amend the caption in this case accordingly.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of May, 2018.

                                         /s/ Victor A. Bolden
                                        VICTOR A. BOLDEN
                                        UNITED STATES DISTRICT JUDGE