## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF CONNECTICUT

ROBERT E. CRABTREE, JR.,

           *Plaintiff,*

  -against-

HOPE'S WINDOWS, INC.,

           *Defendant.*

Civil Case No.: 3:17-cv-01709-VAB

Date: June 27, 2018

## MOTION FOR SUMMARY JUDGEMENT

The Defendant, Hope's Windows Inc., moves the Court under Fed. R.Civ. P. 56 to grant Summary Judgment for the Plaintiff on the grounds that there is no genuine dispute as to any material fact, as more particularly appears in Defendant's Memorandum filed in support of this Motion.

Dated: Ridgefield Connecticut
     June 27, 2018

                                      Christopher J. Molyneaux
                                      Attorney for Defendant

## CERTIFICATE OF SERVICE

I, Christopher J. Molyneaux, hereby certify that on June 27th, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent via e-mail to all parties by blank of the Court's electronic filing system.

Dated: Ridgefield, Connecticut
      June 27, 2018

The Defendant

By _____
Christopher J. Molyneaux
Federal Bar Number: CT 11954

Thomas B. Decea, Esq.
Fishman Decea & Feldman
*Attorneys for Plaintiff*
84 Business Park Drive, Suite 200
Armonk, New York 10504
tdecea@dfdlawfirm.com

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ROBERT E. CRABTREE, JR., | Civil Case No.: 3:17-cv-01709-VAB |
| *Plaintiff,* | |
| -against- | Date: June 27, 2018 |
| HOPE'S WINDOWS, INC., | |
| *Defendant.* | |

## DECLARATION OF CHRISTOPHER J. MOLYNEAUX

Christopher J. Molyneaux, an attorney duly admitted to practice law in the State of Connecticut, affirms the following to be true under penalties of perjury.

1. I am an attorney for the Law Offices of Christopher J. Molyneaux, LLC, and as such I am fully familiar with the facts and circumstances set forth herein.

2. I submit this declaration in support of Hope's Windows' Motion for Summary Judgment to the January 16, 2018 Amended Complaint (the "Amended Complaint") of Plaintiff Robert E Crabtree, Jr. ("Plaintiff").

3. A true and correct copy of the Amended Complaint is attached hereto as Exhibit A.

4. A true and correct copy of the complaint filed by Plaintiff against Hope's Windows in a 2010 Connecticut Superior Court action is attached hereto as Exhibit B.

5. A true and correct copy of the May 5th, 2010 settlement agreement by and between the Plaintiff and Hope's Windows is attached hereto as Exhibit C.

6. A true and correct copy of the May 17, 2010 general release made by the Plaintiff in favor of Hope's Windows is attached hereto as Exhibit D.

7. An affidavit by Randall P. Manitta, President and CEO of Hope's Windows is attached hereto as Exhibit E.

Wherefore, the Plaintiff's Amended Complaint should be dismisses in its entirety.

Dated: Ridgefield, Connecticut
June 27, 2018

Christopher J. Molyneaux
Attorney for Defendant

## CERTIFICATE OF SERVICE

I, Christopher J. Molyneaux, hereby certify that on June 27th, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent via e-mail to all parties by blank of the Court's electronic filing system.



Dated: Ridgefield, Connecticut
       June 27, 2018

The Defendant

By_____
Christopher J. Molyneaux
Federal Bar Number: CT 11954

Thomas B. Decea, Esq.
Fishman Decea & Feldman
*Attorneys for Plaintiff*
84 Business Park Drive, Suite 200
Armonk, New York 10504
tdecea@dfdlawfirm.com

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF CONNECTICUT

ROBERT E. CRABTREE, JR.,

*Plaintiff,*

-against-

HOPE'S WINDOWS, INC.,

*Defendant.*

Civil Case No.: 3:17-cv-01709-VAB

Date: June 27, 2018

## <u>MEMORANDIUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT</u>

The Defendant

By_____
Christopher J. Molyneaux
Federal Bar Number: CT 11954

# T ABLE OF CONTENTS

Table of Authorities     2

Preliminary Statement     3

Statement of Relevant Facts     4

Standard Review     4

Argument

    I.    Plaintiff's Claims Have Benn Released     5,6

    II.   Plaintiff's Claims are Time-Barred     6,7

    III. Res Judicata     7

Conclusion     9

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

 Allen v. McCurry, 449 US 90, 101 S. CT. 411, 66 L.  Ed. 2d 308 (1980)              7

Connell v. Coldwell 214 Conn.242 (1999)                                                                5

Crabtree Jr. Robert v. Hope's Windows, Docket No: FST-cv-10-6003789-S                                   3

Haesche v. Kissner, 229 Conn. 213 (1994)                                                                5

Levine v. Massey, 232 Conn. 272, 654 A2d 737 (1995)                                                     6

Millrt v. Technologies, Inc. 233 Conn. 732 (19985)                                                      5

Niehus v. Cowles Business Media, Inc.,  263 Conn.178 , 819 A2d 765 (2003)                               6

Poligas v. Nationwide Mutual Ins. Co., 225 Conn. 601, 767 A2d 1202 (2001)                              7

Savvidis v. City of Norwalk, 129 Conn. App. 406, 21 A. 3d 842, (2011)                                  7,8

Suarze v. Dickmont Plastics Corp., 229 Conn. 99, (1994)                                                 4

Talbert v. Connecticut General Life Ins. Company, 257 Conn. 118, 778 A.2d (2001)                       7

United Oil Co. v. Urban Redevelopment Comm., 158 Con. 364, (1969)                                       5


**Statutes**

Connecticut General Statute Section 52-576                                                              3,4

Section 42-110 g (f)                                                                                     3

Connecticut Practice Book Section 17-49                                                                 4

## PRELIMINARY STATEMENT

The defendant, Hope's Windows, respectfully submits the Memorandum of Law in support of their motion for Summary Judgment of the January 16, 2018 amended complaint of Plaintiff Robert E. Crabtree, Jr.

Summary Judgment should be granted with regard to the Amended Complaint because 1) the Plaintiff released and forever discharged the Defendant, Hope's Windows, from all actions, claims and causes of action, 2) the Plaintiff's claims one time barred pursuant to Connecticut General Statute Section 52-576 and Section 42-110 g (F) Res Judicata bars the Plaintiff from relitigating issues that were or could have been raised in a prior action. <u>Crabtree Jr. Robert v. Hope's Windows,</u> Docket No: FST-cv-10-6003789-S.

The Plaintiff's Amended Complaint alleges the supply and installation of defective windows at the property 918 North St., Greenwich, CT. However, the Plaintiff previously settled and released all claims relating to Defendant. On February 16, 2010, Plaintiff commenced an action in State Superior Court alleging nearly identical claims to those he now asserts. On May 5, 2010 the Plaintiff and Defendant entered into a Settlement Agreement and Plaintiff withdrew the action. The Settlement Agreement expressly states that Plaintiff releases and discharges all claims that Plaintiff has or may have against Defendant. In connection with that Settlement Agreement, Plaintiff also signed a General Release, that released Defendant, "from all actions, claims, and causes of action, including, but not limited to, all claims ever had, now have or hereafter can, shall or may, have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of the Release." Each document standing alone is a barr to Plaintiff's current claims.

In addition, the Plaintiff's claims are time-barred pursuant to Conn. Gen. Stat. section 52-576, an action based on a written contract must be brought within six (6) years after the injury has been inflicted. The Statute of Limitations began to run when the parties completed the transaction in 2007; the Statute of Limitations period long since lapsed.

Finally, the Plaintiff claims fail as res judicata holds that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action, since the Plaintiff is raising similar claims in this suit as he did in 2010 in State Court, he is precluded to do so again.

<u>STATEMENT OF RELEVANT FACTS</u>

This Court and the Plaintiff are respectfully referred to the declaration of Christopher J. Molyneaux, together with all exhibits thereto for a full and complete description of all relevant facts.

<u>STANDARD OF REVIEW</u>

Connecticut Practice Book Section 17-49 provides that Summary Judgment, "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking Summary Judgment has, "the burden of showing the absence of any genuine issue as to all the material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law." <u>Suarze v. Dickmont Plastics Corp.,</u> 229 Conn. 99, 105 (1994). The party opposing the motion for Summary Judgment, in turn, "must provide an evidentiary foundation to

demonstrate the existence of a genuine issue of material fact. Id. "Mere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue." <u>United Oil Co. v. Urban Redevelopment Comm.,</u> 158 Con. 364, 377 (1969). Further, mere allegations of the existence of a genuine issue of material fact is not enough to counter a motion for summary judgment. <u>Miller v. Technologies, Inc.,</u> 233 Conn. 732, 745, 600 A2d 810 (1995).

When ruling on a motion for Summary Judgement, the Court, "must review the evidence in a light most favorable to the non-moving party." <u>Connell v. Coldwell,</u> 214 Conn. 242, 246-247 (1999). The test used by the Courts in ruling on a Summary Judgement motion is to determine whether the moving party would be entitled to a directed verdict if the same set of facts were presented at trial. <u>Haesche v. Kissner,</u> 229 Conn 213 (1994). A directed verdict is properly rendered when the evidence, viewed in the light most favorable to the non-moving party, is such that the, "trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. "<u>United Oil Co</u>." 158 Conn. at 380.

<u>Argument</u>

Plaintiff claims his previous lawsuit in state court and his present lawsuit are dissimilar and his present action is not covered by the Settlement Agreement and Release.

Under Connecticut law, a contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction... (T)he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and...the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matters of the contract...Where the

language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity…Similarly any ambiguity in a contract must emanate from the language used in the contract rather than from one parties' subjective perception of the terms." <u>Niehus v. Cowles Business Media, Inc.,</u> 263 Conn.178 ,188-89, 819 A2d 765 (2003). When only one interpretation of a contract is possible, the Court need not look outside the four corners of the contract. <u>Levine v. Massey</u>, 232 Conn. 272, 278, 654 A2d 737 (1995).

The Federal lawsuit made claims similar to the State lawsuit. On May 5, 2010, Plaintiff and Defendant entered into a Settlement Agreement and the Plaintiff filed a withdrawal of Action. The settlement agreement states, "in full and final satisfaction of any and all claims Crabtree has or may have against Hope…" All claims that the Plaintiff had or may have had against the Defendant were released and discharged by the considerations and mutual promises contained in the Settlement Agreement.

In addition to the Settlement Agreement, a Release was signed by the parties. Said Release was intended to cover all claims between the Plaintiff and the Defendant, including claims that may have been unforeseen. Hope's Windows are absolved of lability of any causes of action which was in existence at the time of execution, whether or not the Plaintiff knew of such claims. See Exhibit D.

<u>Plaintiff's Claims are Time Barred</u>

The law concerning when a breach of contract action occurs is well settled. This Court has stated that in an action for breach of contract….the course of action is complete at

the time the breach of contract occurs, that is, when the injury has been inflicted...Although the application of this rule may result in occasional hardship, it is well established that the ignorance of the fact that damage has been done does not prevent the running of the statute except where there is something tantamount to a fraudulent concealment of a cause of action. Talbert v. Connecticut General Life Ins. Company, 257 Conn. 118, 124-25, 778 A.2d (2001). "While the statute of limitations normally begins to run immediately upon the accural of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having occurred. The true test is to establish the time when the Plaintiff first could have successfully maintained an action." Poligas v. Nationwide Mutual Ins. Co., 225 Conn. 601, 609, 767 A2d 1202 (2001).

The Plaintiff alleges that, "the windows and doors purchased from Hopes was installed and completed by 2008." However, Plaintiff's breach of warranty claim is time barred as the purchase was done more than six (6) years ago. Under Conn. Gen. Stat. Section 52-576 an action based on a written contract must be brought within six (6) years after the right accrues. Hence, the statute of limitations expired years prior to this present lawsuit.

## Res Judicata

The doctrine of res judicata, or claim preclusion, holds that a final judgement on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. Allen v. McCurry, 449 US 90, 94, 101 S. CT. 411, 66 L. Ed. 2d 308 (1980); Savvidis v. City of Norwalk, 129 Conn. App. 406, 410-412, 21 A. 3d 842, 844-46 (2011).

The determination whether a claim "could have been made" in a prior action depends upon "whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims and whether the facts essential to the second were present in the first." <u>Savvidis</u>, Supra., 129 Conn. App at 410,411.

Again, Plaintiff is trying to relitigate issues that were made or could have been made in the State action. Plaintiff cannot proceed on this second action even though Plaintiff is prepared to present evidence or grounds or theories of the case not presented in the first action as a State case extinguishes all claims of this lawsuit as the claims are similar. (see Molyneaux Decl. Exhibits A and B).

## CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment

should be granted against the Plaintiff's Amended Complaint.


Dated: Ridgefield, Connecticut
June 27, 2018

Respectfully submitted,
Hope's Windows

By_____

Christopher J. Molyneaux
Federal Bar Number: CT 11954

Thomas B. Decea, Esq.
Fishman Decea & Feldman
*Attorneys for Plaintiff*
84 Business Park Drive, Suite 200
Armonk, New York 10504
tdecea@dfdlawfirm.com

## CERTIFICATE OF SERVICE

I, Christopher J. Molyneaux, hereby certify that on June 27th, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent via e-mail to all parties by blank of the Court's electronic filing system.

Dated: Ridgefield, Connecticut
      June 27, 2018

The Defendant

By_____
Christopher J. Molyneaux
Federal Bar Number: CT 11954

Thomas B. Decea, Esq.
Fishman Decea & Feldman
*Attorneys for Plaintiff*
84 Business Park Drive, Suite 200
Armonk, New York 10504
tdecea@dfdlawfirm.com

# EXHIBIT A

| | | |
|---|---|---|
| ROBERT E. CRABTREE, JR., | : | |
| | : | Civil Case No: 3:17-cv-01709-VAB |
| Plaintiff, | : | |
| | : | January 16, 2018 |
| - v - | : | |
| | : | |
| HOPE'S WINDOWS, INC., BRIGHT WINDOW | : | |
| SPECIALISTS, INC., and RICHARD KUSYK | : | |
| | : | |
| Defendant. | : | |

## FIRST AMENDED COMPLAINT OF
## PLAINTIFF ROBERT E. CRABTREE, JR.

Plaintiff, Robert E. Crabtree, Jr. ("Plaintiff"), by and through his attorneys, Fishman

Decea & Feldman as and for his first amended complaint herein alleges the following:

1.    Plaintiff is a resident of the State of Vermont and is the fee owner of certain real

property located at, and known as, 918 North Street, Greenwich, Connecticut (the "Premises").

The Premises are the subject of this action.

2.    Defendant Hope's Windows, Inc. ("Hope's") is upon information and belief a

foreign business corporation formed in the State of Delaware which maintains a principal place

of business at 84 Hopkins Avenue, Jamestown, New York 14702.

3.    Defendant Bright Window Specialists, Inc. ("Bright"), which maintains an office

at 214 West 29th Street, New York, New York 10001, is upon information and belief defendant

Hope's sole regional authorized sales representative for Greenwich, Connecticut, where the

Premises are located.

3.  Defendant Richard Kusyk ("Kusyk") is the owner of Bright which installed the windows and doors at the Premises and which are the subject of this action and who represented to Plaintiff that the windows were guaranteed for lifetime.

4.  Hope's touts itself as the "world's preeminent manufacturer of custom steel windows, steel doors, security windows, fire-rated windows, and other architectural products."

5.  In an effort to sell its product, Hope's, individually, and by and through its authorized agents including the other defendants herein named represents to the world the following:

Hope's meticulous manufacturing process and unrivaled artistry result in windows and doors of impeccable quality. And for good reason. We painstakingly handcraft each window and door in the United States, and back each with a stellar reputation for the finest quality.

Engineering Process:

Hope's project engineering group interactively works with customers and architects in developing window and door design concepts to provide the highest quality product and assure continuous customer satisfaction. We utilize the latest and most technologically advanced releases of AutoCAD in preparing the document drawings. Hope's also enlists the support and input of all internal groups to furnish their expertise in planning the project.

Manufacturing Process:

Each window and door Hope's creates is proudly handcrafted to meet an owner's, architect's, and builder's most exacting and demanding requirements. Since each window and door is custom-made, Hope's windows can be designed to enhance any architectural theme.

Hope's steel windows are created from solid, hot-rolled steel sections. The superior strength of steel, combined with welded fabrication, produces frames and ventilators that will not rack. All frame and vent corners and muntin intersections are fully welded and ground smooth resulting in enhanced weather resistance and joints that are stronger than the steel itself.

4.  It was these representations upon which Plaintiff relied in retaining Hope's to supply the lifetime guaranteed windows for his custom made home . The products manufactured

Case ...

by Hope's may only be purchased through authorized dealers; Bright is Hope's only authorized representative in the entire Northeastern United States so the purchase of the windows had to be effectuated through Bright and the windows and doors were installed by Kusyk. At all times relevant hereto Kusyk knowing he is the only representative in the area acts the part with a "take it or leave it" attitude.

5. The windows installed at the Premises came with a lifetime warranty from manufacturing defects. Bright, by and through Kusyk, have repeatedly recognized that:

> Hope's has developed ways to make those windows accommodate insulating glass, triple weather stripping and superior finishes that **will last a lifetime**. (Emphasis supplied).

6. Hope's products were purchased from Hope's *via* Bright. To this end, on or about December 2, 2005, Plaintiff, by and through his general contractor, entered into a contract with Bright to purchase windows and doors from Hope's for installation at his home.

7. The original contract price bargained for between Plaintiff, by and through his general contractor, and Bright for the windows and doors was $598,630 (the "Contract"). Subsequent changes to the Contract resulted in an increased contract price of $785,885 by September 2006. By the time the doors and windows were installed, the Contract price had increased to almost $1,000,000.

8. Plaintiff has fulfilled all of his obligations under the Contract.

9. By 2007, ninety-five percent of the windows and doors had been installed and by 2008 Plaintiff moved into the home. In the ensuing months Plaintiff discovered that windows and doors frames were defective by reason of the fact that there were missing frame pieces, the window sills and door bucks were not set properly and rattled, the hardware was either missing or improperly installed, did not have handles and were otherwise unusable and inoperable for their intended purposes. At the time Plaintiff had no knowledge of any defects in the glass itself.

10. When defendants refused to stand by the installation of windows and doors Plaintiff was forced to bring a legal action which was settled and general releases were exchanged. The releases by their terms released all claims from the beginning of time to the date of the release. All of the facts upon which this action is based occurred in 2017, after the date of the release, and are not precluded by the release.

11. Indeed, it was not until February 2017 that the first of five windows at the Premises spontaneously fractured like an automobile windshield. Thereafter, by late summer four additional windows spontaneously burst in the same manner. The defective windows were purchased and installed under the $1,000,000 Contract.

12. The windows burst spontaneously and were not, and could not be, damaged based upon any act or omission on Plaintiff's part; the only possible cause of the fractures of the lifetime warrantied windows is a manufacturing defect.

13. Plaintiff contacted Bright, Kusyk and Hope's (the only authorized dealer in the region), to request that defendants replace the defective windows and doors which by Kusyk's own words "will last a lifetime". It what is tantamount to extortion, and knowing that Plaintiff had no other option but to deal with Bright, Kusyk agreed to come to inspect the defective windows only after he was paid a $1,500 down payment fee. With no other alternative, Plaintiff paid the fee; when Kusyk inspected the windows he said he could replace them for a minimum of $3,500 per window which he stated was the retail price of the windows.

14. Defendants refused to replace the defective windows which they represent "will last a lifetime," under the warranty.

15. Despite due demand therefore, Bright and Kusyk failed and refused to return to Plaintiff the $1,500 deposit for the windows.

4

## AS AND FOR A FIRST CAUSE OF ACTION
(Violation of C.G.S. Title 42a)

16. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 15 herein.

17. This case involves the sale of goods by a merchant in excess of the monetary limitations and therefore is governed by C.G.S.A. § 42a-2-101 *et seq*.

18. Plaintiff accepted and paid for goods from defendants which he then discovered were non-conforming.

19. As a result of defendants' violation of C.G.S.A. § 42a-2-101 *et seq*., Plaintiff is entitled to a money judgment is the sum of $1,000,000 plus incidental and consequential damages in an amount to be determined upon the trial of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Contract)

20. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 19 herein.

21. The Contract required Bright to install Hope's windows and provide to Plaintiff a lifetime warranty of the windows and doors at the Premises. Bright installed Hope's windows and doors in the Premises however the windows and doors (the "Goods") were negligently and defectively manufactured and spontaneously fractured.

22. Plaintiff specifically chose the Goods based on Hope's representation that it is the "world's preeminent manufacturer of custom steel windows, [and] doors,"[1] based upon the other representation made by defendants as set forth above, including Kusyk's representation that the Goods would be free of defect and last a lifetime. In so representing itself to consumers including Plaintiff, Hope's had a duty to manufacture its products in accordance with the standards of the industry generally, if not better.

---

[1] See, www.hopeswindows.com (last visited on September 14, 2017).

5

23. Hope's breached its duty by negligently and defectively manufacturing the Goods which are inferior and unusable for their intended purposes.

24. As a result of Hope's breach as aforesaid, Plaintiff has incurred damages in an amount it would cost to cover which shall to be determined upon the trial of this action but presently believed to be in excess of $2,500,000 and Plaintiff demands judgment thereon.

## AS AND FOR A THIRD CAUSE OF ACTION
(Breach of Implied Warranty)

25. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 24 herein.

26. Hope's was the manufacturer of all of the Goods delivered to and installed at the Premises.

27. As the manufacturer, Hope's had an implied duty to manufacture goods of a certain quality and caliber, and additionally, goods that worked for their intended purposes, as it represented to Plaintiff.

28. The Goods manufactured and installed at the Premises were not of the quality and caliber represented to Plaintiff. In addition, the Goods were substantially defective in that they began systemically to fracture over time starting in 2017.

29. Hope's breached the aforesaid duty when it manufactured the defective Goods – windows and doors that began to self-destruct – and supplied the Goods to Bright to install at the Premises.

30. Earlier this year Plaintiff discovered that the quality and caliber of the Goods as manufactured were not as Hope's represented to him. In addition, Plaintiff discovered substantial nonconformities with the Goods – including the systemic fracturing of the windows.

31. As a result of Hope's breach as aforesaid, Plaintiff has incurred damages in an amount it would cost to cover the Goods in the marketplace which shall to be determined upon

the trial of this action but presently believed to be in excess of $2,500,000 and Plaintiff demands judgment thereon.

AS AND FOR A FOURTH CAUSE OF ACTION
(Revocation of Acceptance)

32. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 31 herein.

33. Title VII of the C.G.S. applies to the sale of goods.

34. Plaintiff entered into the Contract with Bright under which Bright was obligated to Plaintiff to install goods purchased from Hope's.

35. Bright performed its obligation under the Contract by installing the Goods from Hope's in Plaintiff's home. The Goods, as provided to Bright by Hope's, were nonconforming in that the Goods were substantially defective.

36. Shortly after Plaintiff moved into the Premises, he discovered nonconformities in the Goods in the form of missing pieces, unevenness, and poor installation. Rather than stand by the workmanship defendants failed and refused to repair the work. Plaintiff was forced to commence a legal action which was settled. None of the defects found at the time of the prior action included defective glass which glass only started to burst spontaneously in 2017; therefore the defects, and damages therefrom, were only discovered in 2017.

37. The new nonconformities substantially impair the value of the Goods and indeed the Premises, since the Goods need to be replaced.

38. Plaintiff has revoked, and hereby revokes, his acceptance of the Goods insofar as they are cracking from improper manufacturing and not from their use by Plaintiff.

39. Although Plaintiff repeatedly requested defendants to inspect the defects, they only agreed to do so but only on the condition that Plaintiff pays a down payment of $1,500 to be applied towards the cost of the replacement windows. Plaintiff paid the fee but has refused to

7

accept defendants' cost bid for the replacement products and Bright and Kusyk have failed and refused to return the down payment made by Plaintiff.

40. Accordingly, Plaintiff demands a full refund of the price paid pursuant to the Contract and the other damages afforded to him under Title VII of the C.G.S., including incidental and consequential damages and attorneys' fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Conversion)

41. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 40 herein.

42. Plaintiff's has in all respects possessory rights or interest in the down payment.

43. Defendant's Bright and Kusyk have wrongfully exercised dominion over the down payment in derogation of Plaintiff's right.

44. Despite due demand therefore, defendants Bright and Kusyk have failed and refused to return the down payment.

45. Accordingly, Plaintiff is entitled to compensatory and punitive damages in an amount to be determined upon the trial of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
(CUPTA Violation)

46. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 45 herein.

42. By defendants' actions as set forth herein, including the business practice that resulted in the conversion complained of herein, they have violated the Connecticut Unfair Trade Practices.

41. Accordingly, Plaintiff is entitled to compensatory, punitive and statutory damages in an amount to be determined upon the trial of this action.

WHEREFORE, Plaintiff seeks judgment against defendant as follows:

8

# EXHIBIT B

DOCKET NUMBER: CV-10-       :    SUPERIOR COURT
                           :
ROBERT E. CRABTREE, JR.,    :    JUDICIAL DISTRICT
                           :    OF STAMFORD/NORWALK
                Plaintiff,  :
v.                          :    AT STAMFORD
                           :
HOPE'S WINDOWS, INC         :
                           :
                Defendant.  :    February 3, 2010

## VERIFIED COMPLAINT OF PLAINTIFF ROBERT E. CRABTREE, JR.

Plaintiff Robert E. Crabtree, Jr. ("Plaintiff"), by and through his attorneys Danzig Fishman & Decea as and for his verified complaint herein alleges the following:

1. Plaintiff is a resident of the State of Connecticut and resides at 918 North Street, Greenwich (the "Premises"). The Premises are the subject of this action.

2. Defendant Hope's Windows, Inc. ("Hope's") is upon information and belief, a foreign business corporation formed in the State of Delaware which maintains a principal place of business at 84 Hopkins Avenue, Jamestown, New York 14702.

3. Defendant Hope's touts itself as the "world's preeminent manufacturer of custom steel windows, steel doors, security windows, fire-rated windows, and other architectural products." Hope's was founded in 1912 and was originally known as International Casement Company, Inc.

4. The products manufactured by defendant Hope's may only be purchased through authorized dealers. When Plaintiff wanted

to purchase windows for the Premises which he began constructing in 2005, by and through his general contractor he decided to purchase his custom windows and doors from defendant Hope's.

5. Hope's directed Plaintiff to Bright Window Specialists, Inc. ("Bright Windows"), its regional authorized sales representative for Greenwich, Connecticut. Defendant Hope's products were accordingly purchased from defendant Hope's via Bright Windows. To this end, on or about December 2, 2005, Plaintiff, by and through his general contractor, entered into a contract with Bright Windows to purchase windows and doors from defendant Hope's for installation at his home.

6. The original contract price bargained for between Plaintiff, by and through his general contractor, and Bright Windows for the windows and doors was $598,630 (the "Contract"). Subsequent changes to the contract resulted in an increased contract price of $785,885 by September 2006. By the time the doors and windows were installed, the contract price had increased to almost $1,000,000.

7. Plaintiff has fulfilled all of his obligations under the Contract.

8. By 2007, ninety-five percent of the windows and doors had been installed and by 2008 Plaintiff moved into the home. In the ensuing months Plaintiff discovered that windows and doors were defective; there were missing pieces, the windows and doors

rattled, leaked, did not have handles and were otherwise unusable and inoperable for their intended purposes. Among other things, the windows and doors do not operate properly (as set forth above), are uneven, do not match and are generally defective in numerous and substantial ways.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
(Products Liability)

9. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 8 herein.

10. The Contract required Bright Windows to install Hope's windows and doors in the Premises. Bright Windows installed Hope's windows and doors in the Premises however the windows and doors (the "Goods") were negligently and defectively manufactured.

11. Plaintiff specifically chose the Goods based on Hope's self representation that it is the "world's preeminent manufacturer of custom steel windows, [and] doors."[1] In so representing itself to consumers including Plaintiff, Defendant Hope's had a duty to manufacture its products in accordance with the standards of the industry generally, if not better.

12. Defendant Hope's breached its duty by negligently and defectively manufacturing the Goods which are inferior and unusable for their intended purposes.

---

[1] <u>See</u>, www.hopeswindows.com (last visited on November 19, 2009).

3

13. As a result of defendant Hope's breach as aforesaid, Plaintiff has incurred damages in an amount to be determined upon the trial of this action but presently believed to be in excess of $1,000,000 and Plaintiff demands judgment thereon.

### AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Implied Warranty)

14. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 13 herein.

15. Defendant Hope's was the manufacturer of all of the Goods delivered to and installed at the Premises.

16. As the manufacturer, defendant Hope's had an implied duty to manufacture goods of a certain quality and caliber, and additionally, goods that worked for their intended purposes, as it represented to Plaintiff.

17. The Goods manufactured and installed at the Premises were not of the quality and caliber represented to Plaintiff. In addition, the Goods were substantially defective in that they did not work for their intended purposes.

18. Defendant Hope's breached the aforesaid duty when it manufactured the defective Goods – windows and doors that did not work as intended – and supplied the Goods to Bright Windows to install at the Premises.

19. After moving into his newly built home, Plaintiff discovered that the quality and caliber of the Goods as

4

manufactured were not as defendant Hope's represented to him. In addition, Plaintiff discovered substantial nonconformities with the Goods – leaks, missing pieces, and unevenness of the goods themselves (as opposed to unevenness as a result of hanging) – after moving into his new home.

20. Accordingly, as a result of defendant Hope's breach of implied warranties, Plaintiff should be able to recover the difference between the value of the Goods accepted and the value that the Goods would have had if they had been as warranted.

### AS AND FOR A THIRD CAUSE OF ACTION
(Revocation of Acceptance)

21. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 20 herein.

22. Article 2 of the Uniform Commercial Code applies to the sale of goods.

23. Plaintiff entered into the Contract with Bright Windows under which Bright Windows was obligated to Plaintiff to install goods purchased from defendant Hope's.

24. Bright Windows performed its obligation under the Contract by installing the Goods from defendant Hope's in Plaintiff's home. The Goods, as provided to Bright Windows by defendant Hope's, were nonconforming in that the Goods were substantially defective.

25. Shortly after Plaintiff moved into the Premises, he discovered nonconformities in the Goods in the form of missing pieces, unevenness, and leaks, among other things, thereby rendering the Goods unusable for their intended purposes.

26. In addition, these nonconformities substantially impaired the value of the Goods and indeed the Premises, since the Goods were unusable.

27. Plaintiff revoked his acceptance of the Goods themselves (not the installation thereof) on or about January 1, 2009, when Plaintiff advised Bright Windows and defendant Hope's that the Goods were substantially nonconforming and that he was rejecting them.

28. Although plaintiff repeatedly requested that Hope's visit the home defendant Hope's has failed and refused even to visit the Premises to determine the extent of the nonconformities of the Goods.

29. Accordingly, Plaintiff demands a full refund of the price paid pursuant to the Contract as provided for in the Uniform Commercial Code.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (CUPTA Violation)

30. Plaintiff repeats and reiterates the allegations of paragraphs 1 through 29 herein.

31. By defendant's action as set forth herein plaintiff has violated the Connecticut Unfair Trade Practices.

32. Accordingly, plaintiff is entitled to compensatory, punitive and statutory damages in an amount to be determined upon the trial of this action.

WHEREFORE, Plaintiff seeks judgment against defendant as follows:

A. On his first cause of action for a judgment in an amount to be determined upon the trial of this action but presently believed to be in excess of $1,000,000;

B. On his second cause of action, for a judgment allowing Plaintiff to recover the difference between the value of the Goods as accepted and the value the Goods would have had if they had been as warranted;

C. On his third cause of action for a judgment allowing Plaintiff to recover the entire purchase price paid for the Goods;

D. On his third cause of action for a judgment under CUPTA including compensatory, punitive and statutory damages in an amount to be determined upon the trial of this action.

E.   An order granting to Plaintiff such other and further relief as to this Court may seem just and proper including an award of attorneys' fees.

DANZIG FISHMAN & DECEA

By: _____
THOMAS B. DECEA
A Member of the Firm
Attorneys for Plaintiff
   Robert E. Crabtree, Jr.
Juris Number: 308099
One North Broadway, Suite 1202
White Plains, New York 10601
(914) 285-1400

8

## VERIFICATION

ROBERT E. CRABTREE, JR., being duly sworn, deposes and says:

1. I am the Plaintiff in this action.

2. I have read the Verified Complaint and the facts therein alleged are true and correct to the best of my knowledge; the facts alleged therein upon information and belief I believe to be true.

_____
Robert E. Crabtree, Jr.

STATE OF CONNECTICUT   )
                     )     ss:
COUNTY OF FAIRFIELD     )

Subscribed and sworn to before me on this the 22nd day of January, 2010.

_____
Notary Public

9

# EXHIBIT C

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and among ROBERT E. CRABTREE, JR., ("CRABTREE"), who resides at 918 North Street, Greenwich, Connecticut 06830; HOPE'S WINDOWS, INC. ("HOPE'S"), with offices located at 84 Hopkins Avenue, Jamestown, New York 14702; and BRIGHT WINDOW SPECIALISTS, INC. ("BRIGHT"), with offices located at 214 West 29h Street, New York, New York 1000 1.

## WITNESSETH:

**WHEREAS**, CRABTREE is the owner of real property known as 918 North Street, Greenwich, Connecticut 06830 (the "Property");

**WHEREAS**, HOPE'S is the manufacturer of custom steel windows and doors;

**WHEREAS**, BRIGHT is HOPE'S authorized sales representative and an installer of HOPE'S windows and doors;

**WHEREAS**, CRABTREE, or a contractor acting on his behalf, entered into a contract with BRIGHT for the installation of custom steel windows and doors at the Property that were manufactured by HOPE'S (the "Project");

**WHEREAS**, during BRIGHT's work at the Project a dispute arose between CRABTREE and BRIGHT regarding the windows and doors that BRIGHT was installing at the Property;

**WHEREAS**, on or about February 16, 2010, CRABTREE commenced an action against HOPE'S in Superior Court in Connecticut, entitled Robert E. Crabtree, Jr. v. Hope's Windows, Inc., Docket No.: FST-CVIO-6003789-S, asserting causes of action for products liability, breach of implied warranty, revocation of acceptance and violation of the Connecticut Unfair Trade Practices regarding the windows and doors manufactured by HOPE'S and that were being installed by BRIGHT at the Property;

**WHEREAS**, HOPE'S expressly denies any and all liability or wrongdoing with respect to the allegations set forth in the aforementioned action CRABTREE commenced against HOPE'S;

**NOW, THEREFORE,** in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt of which is hereby acknowledged, without HOPE'S or BRIGHT admitting any liability, responsibility or fault, the parties to this Agreement, their agents, successors and assigns, are desirous to settle, release and discharge any and all claims as follows:

1. Settlement

    a.    In full and final satisfaction of any and all claims that CRABTREE has or

may have against HOPE'S and BRIGHT, on or about May17, 2010, or on another mutually convenient date selected by CRABTREE and BRIGHT, BRIGHT shall perform the remaining "punch list" work, which is expected to take about one week to complete, pursuant to the notations (hand inscribed) in the "Notes" and/or "Repairs Required" sections thereon, if any, a copy of which is annexed hereto as Exhibit "A", and any additional replacement of materials or repairs that HOPE'S and CRABTREE agree may be required to be performed so that the installation of the windows and doors is deemed by HOPE and CRABTREE to be complete in all respects; both parties agree to use generally accepted industry standards to determine that the work is acceptable. Crabtree shall provide BRIGHT with full access to the Property on such date to perform such work as aforesaid.

b.  In full and final satisfaction of any and all claims that BRIGHT has or may have against CRABTREE, BRIGHT shall waive the outstanding balance, in the approximate amount of $25,000.00, that CRABTREE, or a contractor acting on his behalf, has with BRIGHT regarding the Project.

c.  BRIGHT's completion of the aforementioned work shall be deemed satisfactory, acceptable and complete unless Crabtree shall provide written notice to BRIGHT and HOPE'S detailing any alleged deficiencies within the five (5) day period set forth in Paragraphs 2a, b, c and 3 hereof.

2. General Releases

Prior to the commencement of the work set forth in paragraph "1" above:

a.  CRABTREE and Carolyn Crabtree, his wife, shall execute and exchange a General Release, in the form annexed hereto as Exhibit "B", in favor of HOPE'S. The original, fully executed General Release shall be held in escrow by HOPE'S counsel, Gregg P. Garneau, Esq. of Jones Garneau, LLP, 670 White Plains Road, Scarsdale, New York 10583, (914) 472-2300, until five (5) days after BRIGHT completes the aforementioned work. Thereafter, HOPE'S counsel may release from escrow the original, fully executed General Release.

b.  CRABTREE and Carolyn Crabtree, his wife, shall execute and exchange a General Release, in the form annexed hereto as Exhibit "C", in favor of BRIGHT. The original, fully executed General Release shall be held in escrow by BRIGHT's counsel, Michael Nadler, Esq. of Uncyk, Borenkind & Nadler, LLP, 555 Fifth Avenue, 18th Floor, New York, New York 10017, (212) 575-1292 until five (5) days after BRIGHT completes the aforementioned work. Thereafter, BRIGHT's counsel may release from escrow the original, fully executed General Release.

c.  BRIGHT and HOPE'S shall each execute and exchange a General Release, in the form annexed hereto as Exhibit "D" and "E" respectively, in favor of CRABTREE. The original, fully executed General Release shall be held in escrow by CRABTREE's counsel, Thomas B. Decea, Esq. of Danzig Fishman & Decea, One North Broadway, Suite 1202, White Plains, New York 10601, (914) 285-1400, until five (5) days after BRIGHT completes the aforementioned work. Thereafter, CRABTREE's counsel may release

2

from escrow the original, fully executed General Release.

### 3. Withdrawal of Action

Prior to the commencement of the work set forth in paragraph "1" above, CRABTREE's counsel shall execute and exchange with counsel for HOPE'S a Withdrawal of Action Form regarding the action the Superior Court of Connecticut entitled <u>Robert E. Crabtree, Jr. v. Hope's Windows, Inc., Docket No.: FST-CV 10-6003789-S</u>. The original, executed Withdrawal Form shall be held in escrow by HOPE'S counsel until five (5) days after BRIGHT completes the aforementioned work. Thereafter, HOPE'S counsel may release from escrow the Withdrawal Form and file same with the Superior Court.

### 4. Review/Understanding of Release and Agreement Terms

The signatory to this Agreement expressly understand and agree that they have carefully reviewed this Agreement, that they understand the terms of this Agreement, that they had the opportunity to obtain legal advice and that they have relied wholly on their own judgment and knowledge and have not been influenced to any extent whatsoever in making this Agreement by any representations or statements made by the other or anyone acting on behalf of the other.

### 5. Confidentiality

It is understood and agreed that except if required or compelled to do so by law, court order, or governmental agency or regulation, the parties hereto shall not disclose the existence or any terms of this Agreement and settlement to any person or entity other than their respective directors, shareholders, employees, accountants and attorneys.

### 6. Entire Agreement

All agreements and understandings by and between the Parties are embodied and expressed herein, and this Agreement states the entire agreement of the Parties hereto and supersedes all prior and contemporaneous negotiations and agreements, oral or written.

### 7. Modifications

This Agreement may be amended only by a written agreement signed by the Parties.

### 8. Miscellaneous

a. If any provision of this Agreement is or may be held by a court or agency of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

3

b.      The Parties agree that this Agreement may be executed in any number of counterparts, each of which counterparts when signed by the Parties or their authorized representative shall constitute an original.  Executed agreements transmitted by e-mail PDF files shall be deemed originals.

IN WITNESS WHEREOF, the parties, intending to be legally bound, have executed this Agreement as of the date set forth below.

HOPE'S WINDOWS, INC.

By:     Randall P. Manitta
Title:  Executive Vice President
Date:   May 5, 2010

ROBERT E. CRABTREE, JR.

BRIGHT WINDOW SPECIALISTS, INC.

By:
Title:
Date:

4

b.　　The Parties agree that this Agreement may be executed in any number of counterparts, each of which counterparts when signed by the Parties or their authorized representative shall constitute an original. Executed agreements transmitted by e-mail PDF files shall be deemed originals.

　　　　IN WITNESS WHEREOF, the parties, intending to be legally bound, have executed this Agreement as of the date set forth below.

HOPE'S WINDOWS, INC.

_____
　　　　　　　　　　　　　　　　　　　ROBERT E. CRABTREE, JR.

By:
Title:
Date:


BRIGHT WINDOW SPECIALISTS, INC.


_____

By:
Title:
Date:

# EXHIBIT D

## General Release

**To all to whom these Presents shall come or may Concern, Know That,** HOPE'S WINDOWS, INC. ("HOPE'S") on behalf of itself and its Related Entities (as defined below) in consideration of having received, receipt of which is hereby acknowledged, on behalf of ROBERT E. CRABTREE, JR. and CAROLYN CRABTREE (referred to herein collectively as "CRABTREE") and their Related Entities, Ten Dollars ($10.00), together with other good and valuable consideration, releases and forever discharges CRABTREE and his Related Entities from all actions, claims and causes of action, including, but not limited to, any work performed at the real property known as 918 North Street, Greenwich, Connecticut, all suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law, admiralty or equity, which against CRABTREE or his Related Entities, HOPE'S or its Related Entities ever had, now have or hereafter can, shall or may, have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE.

For purposes of this General Release, "Related Entities" shall mean any successors, assigns, agents, employees, servants, representatives, officers, director, shareholders, predecessors, principals, parent corporations, subsidiaries, affiliates, partners, professional corporations, employers, limited liability companies or partnerships, related corporations, heirs, executors, administrators, trustee in bankruptcy and attorneys, contractors, and any other person or entity claiming by or through the signatory hereto, by whatever name such Related Entity may now be known, or may have been known, or may hereafter be known.

This RELEASE constitutes complete payment for all damages, injuries, attorney's fees, costs and expenses and is specifically intended to release CRABTREE and his Related Entities.

Whenever the text hereof requires, the use of the singular number shall include the appropriate plural number as the text in the within instrument may require.

This RELEASE may not be changed orally.

**In Witness Whereof,** the RELEASOR has hereunto set RELEASOR'S hands:

HOPE'S WINDOWS, INC.

By:  Randall P. Manitta
Title: Executive Vice President

Sworn to before me this 5th
day of May , 2010

Notary Public

JOHN J. BUFFONE #01BU6154180
Notary Public, State of New York
Qualified in Chautauqua County
My Commission Expires Oct. 23, 20 10

# General Release

**To all to whom these Presents shall come or may Concern, Know That,** ROBERT E. CRABTREE, JR. and CAROLYN CRABTREE (referred to herein collectively as "CRABTREE") on behalf of themselves and their Related Entities (as defined below) in consideration of having received, receipt of which is hereby acknowledged, on behalf of HOPE'S WINDOWS, INC. ("HOPE'S") and its Related Entities, Ten Dollars ($10.00), together with other good and valuable consideration, release and forever discharge HOPE'S and its Related Entities from all actions, claims and causes of action, including, but not limited to, all claims relating to the action in Superior Court of the State of Connecticut entitled Robert E. Crabtree, Jr. v. Hope's Windows, Inc., Docket No.: FST-CV10-6003789-S, all suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law, admiralty or equity, which against HOPE'S or its Related Entities, CRABTREE or his Related Entities ever had, now have or hereafter can, shall or may, have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE.

For purposes of this General Release, "Related Entities" shall mean any successors, assigns, agents, employees, servants, representatives, officers, director, shareholders, predecessors, principals, parent corporations, subsidiaries, affiliates, partners, professional corporations, employers, limited liability companies or partnerships, related corporations, heirs, executors, administrators, trustee in bankruptcy and attorneys, contractors, and any other person or entity claiming by or through the signatory hereto, by whatever name such Related Entity may now be known, or may have been known, or may hereafter be known.

This RELEASE constitutes complete payment for all damages, injuries, attorney's fees, costs and expenses and is specifically intended to release HOPE'S and its Related Entities.

Whenever the text hereof requires, the use of the singular number shall include the appropriate plural number as the text in the within instrument may require.

This RELEASE may not be changed orally.

**In Witness Whereof,** the RELEASORS have hereunto set RELEASORS' hands:

_____
ROBERT E. CRABTREE, JR.

_____
CAROLYN CRABTREE

Sworn to before me this
17th day of May , 2010

_____
Notary Public

**D. D. ALFANO**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JULY 31, 2013

# EXHIBIT E

# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF CONNECTICUT

|  |  |
| --- | --- |
| ROBERT E. CRABTREE, JR., | Civil Case No.: 3:17-cv-01709-VAB |
| *Plaintiff,* | |
| -against- | Date: June 27, 2018 |
| HOPE'S WINDOWS, INC., | |
| *Defendant.* | |

## AFFIDAVIT IN SUPPORT FOR SUMMARY JUDGEMENT

Randall P. Manitta, being duly sworn, deposes and says:

1. I am over the age of eighteen (18) years and believe in the obligation of an oath.

2. I am the President and Chief Executive Officer of Hope's Windows, Inc. and I am fully familiar with the facts of the above lawsuit. I make this affidavit in support of Hope's Windows' Motion for Summary Judgment.

3. I signed the Separation Agreement on May 5th, 2010 releasing Hope's Windows from all claims that the Defendant has or may have had against Hope's Windows.

4. In addition, Robert and Carolyn Crabtree signed a release in consideration of Ten Dollars ($10.00), together with other good and valuable consideration, released and forever discharged Hope's from all actions, claims and causes of action from the beginning of the world to the day of the date of the signed release.



Affiant

Subscribed and sworn to before me this 28th day of June, 2018.

_Mary C Lausterer_
Notary Public

My commison Expires on: _____

MARY C. LAUSTERER #01LA4652770
Notary Public, State of New York
Qualified in Chautauqua County
My Commission Expires March 30, 2019



THE LAW OFFICES OF CHRISTOPHER J. MOLYNEAUX, L.L.C.
100B DANBURY ROAD · SUITE 105F · RIDGEFIELD, CONNECTICUT 06877 · (203) 456-2667 · JURIS #406879