UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT E. CRABTREE, JR., <br> *Plaintiff*, <br><br> v. <br><br> HOPE'S WINDOWS, INC., *et. al.*, <br> *Defendants*. | No. 3:17-cv-01709 (VAB) |

**RULING AND ORDER ON PENDING MOTIONS**

Robert E. Crabtree, Jr. ("Mr. Crabtree"), has sued Hope's Windows, Inc. ("Hope's Windows") for breach of warranty under the Federal Warranties Act and breach of contract under Connecticut law.

For the following reasons, Hope's Windows motion for summary judgment is **GRANTED,** and Mr. Crabtree's motion to amend the Complaint is **DENIED**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations**

Mr. Crabtree allegedly owns property located at 918 North Street in Greenwich, Connecticut. Second Am. Compl. ¶ 1, ECF No. 49-2 ("Second Am. Compl."). In December 2005, Mr. Crabtree allegedly bought windows and doors through a general contractor. *Id.* at ¶ 4. The windows and doors, manufactured by Hope's Windows, allegedly came with a lifetime warranty. *Id.* at ¶ 6.

By 2008, Mr. Crabtree allegedly moved into the home. *Id.* at ¶ 8. Over the following months, Mr. Crabtree allegedly discovered that windows and door frames were not properly installed, frames were missing pieces, door bucks were not properly set, and some windows were inoperable. *Id.*

1

In 2010, Mr. Crabtree sued Hope's Windows and the general contractor, Bright Window Specialists, Inc, in state court. *Id.* at ¶ 9. The parties eventually settled the state court action, and the Settlement Agreement provided a general release of the parties from "all claims from the beginning of time to the date of the release." *Id.* at ¶ 10. The agreement also stated that it was the "full and final satisfaction of any and all claims that CRABTREE has or may have against HOPE'S . . ." Settlement Agreement, Bright Br., Ex. C, ECF No. 20, at 28–29.

In February 2017, windows and doors allegedly began to spontaneously fracture. Second Am. Compl., at ¶ 11. In late summer 2018, other glass seals allegedly breached, which caused the glass to fill with fog and water. *Id.* at ¶ 11.

### B. Procedural History

On September 26, 2017, Mr. Crabtree sued Hope's Windows and the general contractor in Connecticut Superior Court. ECF No. 1–2. The general contractor removed the case to this Court. ECF No. 1.

On January 16, 2018, Mr. Crabtree moved to amend the Complaint. ECF No. 19. And the general contractor moved to dismiss for failure to state a claim and sanctions. ECF Nos. 20, 31. This Court dismissed Mr. Crabtree's breach of contract, breach of implied warranty, and revocation, and then remanded the remaining claims to Connecticut superior Court. ECF No. 40. The Court also denied the motion general contractor's motion for sanctions. *Id.*

Hope's Windows also moved to dismiss, which the Court denied. ECF Nos. Nos. 35, 40.

On March 1, 2018, Mr. Crabtree moved for entry of default judgment against Hope's Windows. The Court denied this motion. ECF No. 40.

## II. STANDARD OF REVIEW

### A. Summary Judgment

A motion for summary judgment will be granted if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a documentary evidence and sworn affidavits support a motion for summary judgment and "demonstrate[] the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding nonmoving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D.

Conn. Mar. 2, 2007) ("[A] nonmoving party must present 'significant probative evidence to create genuine issue of material fact.'") (quoting *Soto v. Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

Any inferences drawn from the facts must be done in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). Conclusory allegations or denials will not be credited. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). After drawing all inferences in favor of the non-moving party, if no reasonable trier of fact could find in the non-movant's favor and the moving party is entitled to judgment as a matter of law, the summary judgment motion will be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### B.  Amended Complaint

After a party files a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15, which calls for leave "when justice so requires," has been applied liberally to "facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)); *Monahan v. N.Y. City Dept. of Corr.*, 214 F.3d 275 (2d Cir. 2000) (same). Courts usually consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" when deciding whether to grant leave to amend. *Foman*, 371 U.S. at 182.

Although Courts apply Rule 15 liberally, "Rule 16(b) may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007);

4

FED. R. CIV. P. 16(b). Under the Rule 16(b) standard, a party may obtain a modification of the scheduling order only "upon a showing of good cause." *Id.*

III. **DISCUSSION**

   A. **Summary Judgment**

Under Connecticut law, "the determination of what the parties intended by their contractual commitments is a question of law" where there is definitive contract language. *Niehus v. Cowles Bus. Media, Inc.*, 263 Conn. 178, 188 (2003). A "contract must be construed to effectuate the intent of the parties," which can be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Id.* When the contract is "clear and unambiguous, the contract is given effect according to its terms." *Id.*

Hope's Windows argues that it entered into a Settlement Agreement with Mr. Crabtree, providing for "full and final satisfaction of any and all claims Crabtree has or may have against Hope . . ." Hope's Windows argues that all potential claims against Hope's Windows were discharged by the consideration and mutual promises in the Settlement Agreement, including claims unforeseen at the time of execution or whether Mr. Crabtree knew about the claims, and absolved Hope's Windows of liability here.

Hope's Windows also argues that the statute of limitations has passed for a civil action. Mr. Crabtree received the windows and doors by 2008, making Mr. Crabtree's breach of Warranty time-barred under CONN. GEN. STAT. § 52-576, a statute with a six-year statute of limitations period, a period which expired before the filing of this lawsuit.

5

Finally, Hope's Windows argues that claim preclusion prohibits the parties from relitigating issues that Mr. Crabtree could have raised during the state action.

In response, Mr. Crabtree argues that the earlier settlement cannot, as a matter of law, modify the lifetime warranty, citing 15 U.S.C. § 2304, and that at least this issue creates a triable issue of fact. Mr. Crabtree also argues that the statute of limitations began tolling in February 2017, when he discovered the problem, not when Bright Windows installed the windows and doors. The Court disagrees.

Here, the contract terms are both clear and unambiguous. Mr. Crabtree and Hope's Windows were both parties to the settlement agreement. ECF No. 20, at 28. The agreement states that "in consideration of the mutual promises contained herein and other good and valuable consideration, . . . the parties to this Agreement, their agents, successors and assigns, are desirous to settle, release and discharge any and all claims . . ." *Id.* Specifically, the agreement memorialized that the settlement was the "full and final satisfaction of any and all claims that CRABTREE has or may have against HOPE'S . . ." *Id.* at 28–29. The Settlement Agreement also included "[a]ll agreements and understandings by and between the parties . . . and supersedes all prior and contemporaneous negotiations and agreements, oral or written." *Id.* at 30. This clear and unambiguous agreement resolved the earlier state court lawsuit

This "final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "The doctrine [of claim preclusion] precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*,

779 F.3d 102, 108 (2d Cir. 2015). Claim preclusion requires the satisfaction of three elements: "(i) an earlier action resulted in an adjudication on the merits; (ii) that earlier action involved the same counterparty or those in privity with them; and (iii) the claim sought to be precluded was raised, or could have been raised, in that earlier action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 989 F.3d 232, 237 (2d Cir. 2018) ("*Marcel II*"). This case includes each of these elements.

First, the state court action was an adjudication on the merits. Settlements may have a preclusive effect, depending on the "intent of the parties to the settlement." *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992); *Duran v. Kiley*, 586 Fed. App'x. 598, 599 (2d Cir. 2013) ("The settlement in the earlier litigation was embodied in a final judgment on the merits"). Here, the parties intended for the settlement to be a "full and final satisfaction of all claims that CRABTREE has or may have against HOPE'S." *See* ECF No. 20, at 28–29. A necessary condition of this agreement was execution of a withdrawal of action from the Superior Court of Connecticut Action of *Robert E. Crabtree Jr. v. Hope's Windows, Inc.*, Docket No.: FST-CV 10-6003789-S. *Id.* at 30. The Settlement Agreement therefore constituted an adjudication on the merits based on the "intent of the parties." *See Greenberg*, 968 F.2d at 168.

Second, the state action involved the same parties as the current federal lawsuit. The parties to the settlement agreement were "ROBERT E. CRABTREE, JR., [] HOPE'S WINDOWS INC.[,] . . . and BRIGHT WINDOW SPECIALISTS, INC." *See* ECF No. 20, at 28. While the Court dismissed the claims against Bright Window Specialists, Inc., *see* ECF No. 40, Robert E. Crabtree and Hope's Windows remain parties in this case. As a result, "that earlier action involved the same counterparty" as the current action. *See Marcel II*, 989 F.3d at 237.

Third, Mr. Crabtree could have brought this claim during the state action. "Claim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in an earlier lawsuit, even if the issue or defense was not actually raised or decided." *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir. 1992); *see also Marcel II*, 898 F.3d at 237 (applying claim preclusion to defenses). Here, the underlying facts of the second federal claim were all present during the first state-law claim. Mr. Crabtree purchased windows from a general contractor, which Hope's Windows manufactured, and those windows were defective. ECF No. 40, at 3 (referencing the Connecticut Superior Court cause of action). That parties settled that case on May 17, 2010, which extinguished the first claim. Mr. Crabtree is now alleging that the same windows and doors are defective. *Id.* at 4. While the more recent issue of spontaneous fracturing may be new, the claims regarding the defectiveness of these windows and doors are not; they were expressly addressed in the earlier lawsuit.

Because all three elements of claim preclusion have been satisfied, Mr. Crabtree's claim against Hope's Windows is precluded now.

### B.     Amended Complaint

Notwithstanding the deficiency of the current lawsuit, Mr. Crabtree seeks leave to amend his lawsuit and (1) incorporate the Court's prior disposition and remand of the general contractor, Bright Windows; (2) clarify the claims under the Federal Warranty Act; and (3) assert the breach of Hope's Windows' lifetime warranty.

In this proposed amended complaint, Mr. Crabtree alleges that Hope's Windows breached its lifetime warranty and violated the Federal Warranties Act. Beginning in February 2017, glass windows have allegedly shattered, and waterproof door seals have allegedly begun to leak. Mr. Crabtree asserts that Hope's Windows failed to honor a lifetime warranty made with

Mr. Crabtree and that the settlement agreement from the first lawsuit does not vitiate this particular claim. Mr. Crabtree also claims a breach of contract under a similar theory.

In response, Hope's Windows argues that the Second Amended Complaint is untimely; Rule 16(b) limits the ability of the party to amend pleadings after a scheduling order deadline. ECF No. 50, at ¶ 3 (citing *Kassner*, 496 F.3d at 243). Absent a good cause showing, Hope's Windows argues that the motion to amend should be denied.

Hope's Windows further argues that CONN. GEN. STAT. § 52-577(a) bars the breach of warranty claim because the three-year statute of limitations has expired and that the lawsuit should have been brought within three years of when the injury is "first sustained or discovered or in the exercise of reasonable care has been discovered." CONN. GEN. STAT. § 52-577(a). In any event, because Hope's Windows argues that the Settlement Agreement and Release discharges Hope's Windows from "all actions, claims, and causes of action . . . from the beginning of the world to the day of the date of this RELEASE," the Settlement and Release Agreement precluded any claim that could have flowed from the state action, including this alleged lifetime warranty claim. Finally, Hope's Windows argues that it had no contractual obligation to Mr. Crabtree because the contractual relationship was between Mr. Crabtree and Bright Windows Specialists, the general contractor. The Court agrees.

Under Connecticut law, the test for determining whether there is a right of action against a third-party beneficiary is whether the "intent of the parties to the contract was that the promisor should assume a direct obligation to the third party," with that intent being "determined from the terms of the contract read in light of the circumstances attending its making . . ." *Pelletier v. Sardoni/Skanska Const. Co.*, 264 Conn. 409, 531 (2003). Here, Mr. Crabtree has made no showing that Hope's Windows had a third-party obligation to the contract between Mr. Crabtree

9

and Bright Window Specialists. Without an agreement, Hope's Windows has no third-party obligation to the contract between Mr. Crabtree and Bright Window Specialists.

Here, the Second Amended Complaint alleges a breach of contract on the theory that Mr. Crabtree, in part, chose his windows because of Hope's Windows' warranty. *See* First Am. Compl., at ¶ 22, ECF No. 19; Second Am. Compl., at ¶ 6–8, ECF No. 49-2. The Second Amendment Complaint, however, states that the contract was both bargained for between Mr. Crabtree and Bright Windows, as the general contractor. Second Am. Compl., at ¶ 5. None of those allegations, even if true, create a contractual relationship for the Court to enforce. There is no clear and unambiguous contract between Mr. Crabtree and Hope's Windows for the Court to interpret. The Court therefore cannot make a finding for a breach of contract because the only contractual relationship between the parties is unrelated to the contractual liability asserted by Mr. Crabtree. *See Talmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 498–99 (2000) ("As with any question of contractual interpretation, our initial guide must be the actual words used in the contract").

Under 15 § 2304, "when a warrantor breaches a 'full' written warranty, the plaintiff is entitled to a refund or replacement without charge for the defective product." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017); *see also* 15 U.S.C. § 2303(a)(1) (stating that a written warranty shall be designated as "full" where it "meets the Federal minimum standards for warranty set forth in section 2304"). The statute requires that a warranty either be full or limited, with only full warranties receiving full refund or replacement protection. *See Pyskaty*, 856 F.3d at 223 n. 12 (citing 15 U.S.C. § 2303). "In order for a written warranty to qualify as a 'full' warranty, the warrantor: (1) must agree to remedy the defective product within a reasonable time period and without charge; (2) may not impose any limitation on the duration

of any implied warranty on the product; and (3) may not exclude or limit consequential damages for breach of any written or implied warranty on the product, unless such exclusion or limitation appears conspicuously on the face of the warranty." *See id.*

According to the Second Amended Complaint, Hope's Windows makes several aspirational declarations:

> Hope's is committed to crafting windows and doors only from materials with proven ability to last for a century or longer, while providing timeless aesthetic appeal. Our solid steel and bronze windows and doors offer: Unmatched strength and performance . . . Further, the inherent material strength, manufacturing processes, and finishing techniques result in doors and windows that last and sustain their beauty for generations.

Second Am. Compl., at ¶ 6. But these aspirations do not qualify as an agreement "to remedy the defective product within a reasonable time period and without charge." *See Pyskaty*, 856 F.3d at 223 n. 12. Without an express statement to remedy any defective products, there is no breach under the Federal Warranties law, notwithstanding the lack of contractual relationship. *See id* ("The MMWA distinguishes between 'full' and 'limited' warranties and, subject to certain exemptions, requires that written warranties be 'clearly and conspicuously designate[d]' as one or the other . . . to qualify as a 'full' warranty, the warrantor: (1) must agree to remedy the defective product within a reasonable time period and without charge").

Finally, for the same reasons stated above, even if any of these claims did exist, the Settlement Agreement and Release forever discharged Hope's Windows for any liability with respect to the windows and doors. Thus, the doctrine of claim preclusion would foreclose all of these proposed claims against Hope's Windows as well.

Because the amending of the Complaint yet again would be futile, the motion to amend the Complaint will be denied. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)

("Repleading would thus be futile. Such a futile request to replead should be denied"); *Farzan v. Bridgewater Assocs.*, No. 3:16-cv-00935 (SRU), 2017 WL 354685, at *13 (D. Conn. Jan. 24, 2017) (finding that "futile to permit Farzan to replead his allegation of breach of an oral contract").

**IV.    CONCLUSION**

For the foregoing reasons, Hope's Windows' motion for summary judgment is **GRANTED,** and Mr. Crabtree's motion to amend the complaint is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of November 2018.

/s/ Victor A. Bolden

VICTOR A. BOLDEN

UNITED STATES DISTRICT JUDGE